Joseph A. **FIEDLER**, et al., Appellants,

v.

Michael **ADAMS**, et al., Respondents.

No. C3-90-1774.

Court of Appeals of Minnesota.

Feb. 19, 1991.

Review Denied April 29, 1991.

Reconsideration Denied May 23, 1991.

Michael A. Stern, Richard D. Snyder, Minneapolis, for appellants.

John M. Degnan, Charles E. Lundberg, Minneapolis, for respondents.

Considered and decided by LANSING, P.J., and PARKER and KLAPHAKE, JJ.

## OPINION

KLAPHAKE, Judge.

Susan and Joseph Fiedler, and Joseph A. Fiedler, P.A., appeal from a summary judgment against them, arguing that genuine issues of material fact exist concerning causation and damages in a legal malpractice action. We reverse and remand for trial.

## FACTS

Respondent, Michael Adams (Adams) provided legal advice, including financial and tax planning information, to appellants Joseph and Susan Fiedler, and Joseph A. Fiedler, P.A. (the Fiedlers) from 1971 through 1984. During this same period, Adams represented Metropolitan Bank of Bloomington (Metro Bank) in matters unrelated to the Fiedlers, and was a member of Metro Bank's board of directors. Adams also owned a small number of Metro Bank shares.

In 1975, Adams helped the Fiedlers create a pension and profit sharing plan (the plan) for employees of Joseph A. Fiedler, P.A. Adams acted as the sole trustee for the plan. The plan assets consisted of approximately $450,000 in certificates of deposit (CDs). Unbeknownst to the Fiedlers, Adams pledged these CDs as security for Joseph Fiedler's personal loans from Metro Bank.

Adams and the Fiedlers also invested in real estate as general partners. The Fiedlers financed the real estate deals with over $400,000 in loans from Metro Bank. Adams did not inform the Fiedlers that liabilities of limited partners were less than general partners. Adams managed the real estate partnerships for which he received both management and legal fees.

The Fiedlers began to experience financial problems in the early 1980s. By 1984, the Fiedlers owed over $750,000 to Metro Bank, and owed other creditors approximately $250,000. Following Adams' advice, the Fiedlers acquiesced in liquidating some $400,000 of the plan's CDs. That liquidation resulted in the Fiedlers incurring $75,000 in taxes and penalties. The Fiedlers borrowed an additional $75,000 to pay this obligation. In addition, the Fiedlers sold stock for $137,000, and also sold their interest in several real estate partnerships for approximately $110,000. Adams told the Fiedlers they had no choice but to pay all of the funds received from the CDs to Metro Bank because it had an enforceable security interest in the assets. Adams also advised the Fiedlers to pay the funds received from the other assets to Metro Bank as well.

The Fiedlers followed Adams' advice. Adams never advised them, however, of the multiple conflicts of interest arising from his duty as trustee, his duty as the Fiedlers' attorney, his personal interests in the real estate partnership and his interests as shareholder, director, and attorney for Metro Bank. Adams did not advise the Fiedlers of alternative methods to deal with their financial difficulties, nor did he advise them to seek independent counsel.

The Fiedlers filed a complaint against Adams, his law firm, and Metro Bank. Metro Bank was later dismissed, leaving an action for negligence, breach of fiduciary duty, and punitive damages against Adams and Adams & Gustafson, P.A. The trial court granted summary judgment stating that the Fiedlers failed to show that but for Adams' alleged negligence, they "would have taken specific action and those actions would have had specific results in the un-

derlying commercial transactions." The Fiedlers appeal from summary judgment.

## ISSUES

1. Did the trial court err in requiring the "case within a case" element as a separate element of this malpractice claim?

2. Did the Fiedlers present sufficient evidence to show material fact issues regarding proximate cause and damages?

3. Did the Fiedlers present sufficient evidence to show material fact issues concerning their punitive damages and breach of fiduciary duty claims?

## ANALYSIS

■■■ In reviewing a grant of summary judgment, we must determine: (1) whether genuine issues of material fact exist, and (2) whether the trial court erred in applying the law. *Offerdahl v. University of Minnesota Hosps. & Clinics*, 426 N.W.2d 425, 427 (Minn.1988). The evidence is viewed in the light most favorable to the party against whom summary judgment was granted. *Grondahl v. Bulluck*, 318 N.W.2d 240, 242 (Minn.1982). Indeed, if there is any doubt as to the existence of a material fact, the doubt must be resolved in finding the fact issue exists. *Rathbun v. W.T. Grant Co.*, 300 Minn. 223, 230, 219 N.W.2d 641, 646 (1974).

### I.

■■■ In Minnesota, an attorney is obligated to advise a client with "that degree of care and skill that is reasonable under the circumstances, considering the nature of the undertaking." *Prawer v. Essling*, 282 N.W.2d 493, 495 (Minn.1979). Generally, proof of proximate causation in a legal malpractice action is the same as in an ordinary negligence action. *Raske v. Gavin*, 438 N.W.2d 704, 706 (Minn.App.1989) *pet. for rev. denied* (Minn. June 21, 1989). In some cases, however, where the attorney's alleged negligence has caused the loss of or damage to the client's existing cause of action, the client asserting malpractice must also prove that but for the attorney's negligence, "he had a meritori-

ous cause of action originally." *Hill v. Okay Constr. Co.*, 312 Minn. 324, 338, 252 N.W.2d 107, 117 (1977). In essence, this "case-within-a-case" element *describes* the proximate cause element unique to malpractice cases alleging destruction of the client's cause of action.

Here, the parties dispute the application of the so-called "case-within-a-case" element to the present cause of action. The Fiedlers argue this element does not apply because no underlying cause of action was lost.

■■■ We take this opportunity to clarify the elements of a prima facie case for negligent legal advice which does not involve the loss of an underlying claim. To establish a prima facie case, the plaintiff must show: (1) the existence of an attorney-client relationship giving rise to a duty, *Christy v. Saliterman*, 288 Minn. 144, 150, 179 N.W.2d 288, 293 (1970); (2) the negligent giving of advice or exercise of judgment on which the client detrimentally relies, *Togstad v. Vesely, Otto, Miller & Keefe*, 291 N.W.2d 686, 693 n. 4 (Minn. 1980); and (3) the negligent advice or judgment must be the proximate cause of damage to the client. *Hill*, 312 Minn. at 338, 252 N.W.2d at 117; *see also* 1 R. Mallen & J. Smith, Legal Malpractice § 8.10 (3rd ed. 1989). The Fiedlers do not assert the destruction of a cause of action. Rather, they claim that Adams negligently withheld information material to the Fiedlers' decision to pursue or abstain from a given course of action, and that Adams should be liable for the losses suffered as a result of the action taken without benefit of the undisclosed information. Thus, the "case-within-a-case" element is inapplicable.

### II.

We next determine whether the Fiedlers produced sufficient evidence to defeat summary judgment. The parties do not dispute the existence of an attorney-client relationship which clearly established Adams' duty to the Fiedlers. Nor does Adams dispute that issues of material fact exist concerning the breach of his duty. We focus our inquiry on whether issues of material fact

exist concerning proximate cause and damages.

■ Proximate cause is a fact issue for the jury. *Vanderweyst v. Langford*, 303 Minn. 575, 576, 228 N.W.2d 271, 272 (1975). Negligent conduct is the proximate or direct cause of injury if the conduct was a substantial factor in bringing about the injury. *Flom v. Flom*, 291 N.W.2d 914, 917 (Minn.1980); *see also* 4 Minnesota Practice, CIV. JIG II, 140 (1986).

■ Minnesota has adopted the general rule in legal malpractice actions that expert testimony is required to establish the standard of care and breach of that standard. *Hill*, 312 Minn. at 337, 252 N.W.2d at 116. The Fiedlers produced detailed affidavits from three experts on professional ethics, bankruptcy, commercial transactions, and employee benefit plans. Each expert stated Adams' conduct was below the standard of care. According to these experts, Adams had a nonwaivable conflict of interest which required his immediate withdrawal as counsel. In addition, the experts stated Metro Bank's security interest in the plan's assets was unenforceable for several reasons, and that Adams had breached his fiduciary duty as trustee in pledging the assets to the bank. The affidavits outlined at least three other methods to reduce the Fiedlers' debt load while preserving a substantial portion of their assets. In the opinion of the experts, a competent attorney would have informed the Fiedlers of these alternatives and advised them which method would reduce their debt load at the lowest cost. All of the experts concluded that Adams' acts and omissions proximately caused the Fiedlers' losses. We conclude this evidence is more than sufficient to create material fact disputes on the issues of proximate cause and damages. Thus, the trial court improperly granted summary judgment.

## III.

■ The trial court also granted summary judgment, without comment, on the breach of fiduciary duty and punitive damages claims. Punitive damages are allowed in a civil action where clear and convincing evidence shows the defendant acted with willful indifference to the rights or safety of others. Minn.Stat. § 549.20, subd. 1 (1990).

Here, evidence supports the claims that Adams breached his fiduciary duty to the Fiedlers. In addition, the evidence suggests that Adams' conduct was not merely inappropriate or inadvertent, but that he violated his professional obligations to the Fiedlers. This evidence creates a factual issue concerning Adams' willful indifference to his clients' rights. *See Gillespie v. Klun*, 406 N.W.2d 547, 558–9 (Minn.App. 1987) *pet. for rev. denied* (Minn. July 9, 1987) (punitive damages award upheld where attorney failed to withdraw immediately when dispute arose between parties to real estate transaction, both of whom attorney represented).

■ Material fact issues also exist concerning the breach of fiduciary duty claim. Where an attorney breaches the fiduciary duty owed to a client, the attorney forfeits all rights to compensation if the breach involves actual fraud or bad faith. *Gilchrist v. Perl*, 387 N.W.2d 412, 417 (Minn. 1986). Where there is no actual fraud or bad faith, where there is no actual harm to the client, and where the breach involves multiple potential plaintiffs, the attorney's forfeiture may be scaled to an amount commensurate with the misconduct by applying the factors used to determine punitive damages as listed in Minn.Stat. § 549.20, subd. 3 (1990). *Id.*

■ Here, the Fiedlers have alleged specific facts showing Adams' breach of fiduciary duty in failing to disclose his conflict of interest and his failure to withdraw as counsel. The affidavits support the claim. Material issues of fact exist for the jury concerning whether Adams breached his fiduciary duty and if so, whether that breach involved actual fraud or bad faith.

## DECISION

The trial court erred in applying the "case-within-a-case" element of causation where the claim did not involve negligent destruction of an underlying cause of ac-

tion. We conclude the Fiedlers presented sufficient evidence to create material fact issues regarding proximate cause and damages in their negligence claim. Likewise, there exist issues of material fact concerning Adams' willful indifference to the Fiedlers' rights and whether his actions involved actual fraud or bad faith. We reverse summary judgment, and remand for trial on the merits.

Reversed and remanded.