**Bankruptcy Estate of Nancy RAMPY, James E. Ramette, Chapter 7 Trustee, Appellant,**

v.

**William F. MESSERLI and Messerli and Kramer, P.A., Appellees.**

**Civ. No. 97–494/RHK.**

United States District Court, D. Minnesota.

May 5, 1997.

Rebecca E. Bender, Bender & Ford, Minneapolis, MN, for Appellant.

Lynn G. Truesdell, Christopher R. Morris, Bassford, Lockhart, Truesdell & Briggs, P.A., Minneapolis, MN, for Appellees.

## MEMORANDUM OPINION AND ORDER

KYLE, District Judge.

### Introduction

On April 1, 1993, Nancy Rampy ("Rampy") filed for bankruptcy. In May 1995, she filed

suit against Appellees William F. Messerli ("Messerli") and Messerli and Kramer, P.A. ("Messerli and Kramer") in Hennepin County District Court, alleging legal malpractice. The Bankruptcy Trustee of Rampy's bankruptcy estate then commenced an action in the United States Bankruptcy Court for the District of Minnesota, appointing Rampy's counsel to pursue her claim for legal malpractice on behalf of the bankruptcy estate. The parties filed cross Motions for Summary Judgment. In an order dated January 16, 1997, Bankruptcy Judge Nancy C. Dreher granted Appellees' Motion for Summary Judgment and denied Appellant's Motion. Judge Dreher found that the Appellant had failed to establish a prima facie case of legal malpractice because: 1) it had not presented evidence that "but for" Appellee's negligence, Rampy would have had a recoverable claim; and 2) it had failed to present expert testimony showing Appellees breached their duty to Rampy. (Order for Summ. J. at 9–18.) Appellant appealed Judge Dreher's decision, and Appellees filed a timely election to have the appeal proceed in the United States District Court rather than in the Bankruptcy Appellate Panel for the Eighth Circuit. For the reasons set forth below, this Court will affirm the decision of the Bankruptcy Court.

### Factual Background

Rampy's claim for legal malpractice arises from Messerli's legal services involving investments she had made with Brokers Investment Corporation ("BIC"), Bruce Hartberg ("Hartberg"), a broker at BIC, and BIC's principals Daniel Steinberg ("Steinberg") and Norman Shubert ("Shubert"). In May 1992, Rampy approached Messerli after BIC stopped paying her distribution checks. Messerli had represented Rampy during the previous eight years in various legal matters.

Neither Messerli nor anyone at his firm had previously handled a securities matter. Despite this, he did not associate with an experienced securities attorney, nor did he research federal securities law.[1]

Messerli negotiated a settlement agreement on behalf of Rampy with Sovereign Investment Corporation ("Sovereign").[2] On January 21, 1993, Rampy signed the settlement agreement with Sovereign, in which Sovereign agreed to pay Rampy a total of $66,916.35: $3,500 was payable upon execution of the agreement, Rampy was to receive monthly installments of at least $5,000, and the balance was to be paid in full by July 1993. (Appellant's App. at A–33 (Settlement Agreement).) Messerli never attempted to make BIC, Shubert, Steinberg, or Hartberg parties to the settlement. (Messerli Depo. 92–93.) Messerli also did not obtain any security for the future settlement payments, although he claims he attempted to and Sovereign would not agree to it. (Id.) Messerli further admitted that he did not investigate the financial status of Sovereign, BIC, or BIC's principals. (Id. at 29.)

Before entering into the settlement, Messerli claims that he discussed alternatives to settlement with Rampy, including litigation and arbitration, but Rampy denies discussing alternatives to settlement. (Messerli Depo. 25–27, 62–63; Rampy Depo. 96–98.) Messerli did not advise Rampy that the settlement agreement contained no security for future payments. Sovereign made the initial payment to Rampy, but it made no subsequent payments. (Rampy Depo. 103.)

The SEC began investigating BIC and its principals, and in May 1993, the SEC filed a formal complaint against BIC. (Appellees'

---

1. During his deposition, Messerli admitted that he could not name the legal theory under which Rampy could pursue federal securities claims against BIC or its principals. He also could not name the statute of limitations for federal securities law or when those statutes of limitations began to run. Messerli stated the statute of limitations "was not an issue at that point in time" during which he represented Rampy. He admitted that he was not aware how the settlement agreement Rampy entered into could affect her legal claims against BIC. (See Messerli Depo. 93–96.) Messerli also admits that before

he began negotiating with Sovereign, he did not assess the amount of damages that he thought Rampy was entitled to under any of her potential claims. (Id. at 56.)

2. Neither party has identified what Sovereign is or its relationship to BIC. Appellant claims that Messerli admitted during his deposition that he did not know who Sovereign is, although the cited pages of his deposition are not included in the record before the Court. (Appellant's Br. at 6.)

Br. at 3.) The United States District Court for California subsequently enjoined BIC from doing business. (*Id.*)

Rampy then obtained new counsel, Rebecca Bender, who agreed to take the case pro bono. On July 26, 1993, Rampy filed a claim with the National Association of Securities Dealers ("NASD"), naming BIC, Hartberg, Steinberg, and Shubert as defendants. Rampy requested that the defendants deposit $100,000 in escrow prior to the arbitration hearing because of the likelihood that the defendants would hide or dissipate their assets. The arbitrators ordered the defendants to deposit $100,000 in escrow in Minnesota by October 1, 1994, but the defendants did not do so. In a decision issued in December 1994, the arbitration panel awarded Rampy $61,916, plus interest and attorney's fees.

The arbitration award was confirmed in Hennepin County District Court in May 1995. Rampy then hired collection attorneys in California who searched for attachable assets and entered the Minnesota judgment in California. Rampy has collected none of this judgment.

## Analysis

### I. Standard of Review

■ In bankruptcy proceedings, a District Court acts as an appellate court, applying the same standard of review that the Court of Appeals applies. *See In re Waugh*, 109 F.3d 489, 490–91 (8th Cir.1997). This Court reviews the bankruptcy court's grant of summary judgment de novo, with its findings of fact reviewed for clear error. *See id.; In re Roso*, 76 F.3d 179, 181 (8th Cir.1996). "If the record shows that there is no genuine issue of material fact and that the prevailing party is entitled to judgment as a matter of

law, [this Court] will affirm the grant of summary judgment." *In re Waugh*, 109 F.3d 489, 491 (quoting *Southern Tech. College, Inc. v. Hood*, 89 F.3d 1381, 1383 (8th Cir.1996)).

■ Appellant contends that the Bankruptcy Court applied the improper test for determining proximate cause issues in this case. (Appellant's Br. at 15–23.) Appellant also contends that the Bankruptcy Court misstated the law by requiring it to provide expert testimony to show Appellees' breach of duty, and erred in excluding the untimely affidavit of Appellant's expert.[3] (*Id.* at 24–27.)

### II. Prima Facie Case for Legal Malpractice

■ In Minnesota, in order to establish a prima facie case for a legal malpractice claim, a plaintiff must demonstrate: 1) the existence of an attorney-client relationship; 2) acts constituting negligence or breach of contract; 3) that such acts were the proximate cause of the plaintiff's damages; and 4) but for defendant's conduct, the plaintiff would have been successful in the prosecution or defense of the action. *See Ross v. Briggs & Morgan*, 540 N.W.2d 843, 847 (Minn.1995); *Blue Water Corp., Inc. v. O'Toole*, 336 N.W.2d 279, 281 (Minn.1983). However, when a plaintiff claims that an attorney's negligence causes harm by some means other than damaging a cause of action, Minnesota courts have altered the fourth element to fit the facts of that particular case. *See First Bank of Minn. v. Olson*, 557 N.W.2d 621, 623 (Minn.Ct.App.1997), *rev. denied*, Mar. 18, 1997 (citing cases). A failure of proof on any one element defeats recovery. *See Ross*, 540 N.W.2d at 847.

---

**3.** This Court agrees with Appellant that expert testimony in legal malpractice claims is not always required:

> In a professional malpractice action, the plaintiff must present evidence of the applicable standard of care, and that the standard of care was breached. *Generally* expert testimony is required to establish these issues, *unless the conduct can be evaluated by a jury in the absence of expert testimony.*

*Wartnick v. Moss & Barnett*, 490 N.W.2d 108, 112 (Minn.1992) (citing *Hill v. Okay Constr. Co.*,

312 Minn. 324, 252 N.W.2d 107, 116 (1977)) (emphasis added).

In the instant case, the Bankruptcy Court did not discuss whether the Appellees' conduct could be evaluated by the jury in the absence of expert testimony. Because this Court has determined that the Bankruptcy Court properly granted Appellees' Motion for Summary Judgment for an additional, independent reason, the Court need not remand the instant case for resolution of this issue.

The Bankruptcy Court granted Appellees' Motion for Summary Judgment because Appellant failed to establish every element of its prima facie case. (Order for Summ. J. at 9.) Judge Dreher found that Appellant did not provide any evidence of the fourth element: that but for Appellees' negligence, Rampy would have recovered more from BIC or Sovereign than she received in settlement payments. (*Id.* at 9–15.)

Appellant contends that the Bankruptcy Court applied the wrong standard for determining proximate cause. (Appellant's Br. at 15–16.) It argues that Minnesota courts have rejected the "but for" test that Judge Dreher utilized. (*Id.*) Instead, Appellant claims that the Bankruptcy Court should have applied the "substantial factor" test because there are concurrent causes of Rampy's injury. (*Id.* at 16–18.)

■ This Court finds that the Bankruptcy Court applied the proper law for legal malpractice claims. Appellant's arguments are premised upon a misunderstanding of the Bankruptcy Court's Order granting Appellees' Motion for Summary Judgment. When Judge Dreher required Appellant to present evidence that but for Appellees' negligence, Rampy would have recovered more from BIC or Sovereign, she was not discussing the law of proximate cause. She was discussing the law for showing damages for a legal malpractice claim. As with any negligence

claim, a plaintiff in a legal malpractice claim must demonstrate that the defendant's negligence actually caused her damages. *See Blue Water,* 336 N.W.2d at 281 (holding that plaintiff, in legal malpractice case, must prove that had attorney filed bank charter application in a timely manner, it would have received bank charter); *Norberg v. Northwestern Hosp. Assoc.,* 270 N.W.2d 271, 275 (Minn.1978) (upholding jury's determination that hospital negligently cared for psychiatric patient, but that this negligence did not cause plaintiff's injuries); *Christy v. Saliterman,* 288 Minn. 144, 150, 179 N.W.2d 288, 293 (1970) (holding that legal malpractice plaintiff must demonstrate that but for attorney's negligence, plaintiff had an underlying, recoverable claim).

■ Appellant also argues that it is not required to prove the fourth element of a claim for legal malpractice, the "case within a case" requirement.[4] (Appellant's Br. at 19–24.) It contends that Rampy's claim against Appellees is factually different than more common legal malpractice claims in which the attorney's negligence causes the plaintiff to lose a meritorious cause of action, and it cites *Fiedler v. Adams,* 466 N.W.2d 39 (Minn.Ct.App.1991) to support this contention.[5] (Appellant's Br. at 19–20.)

In *Fiedler,*[6] an attorney with numerous, undisclosed conflicts of interest, provided fi-

4. Appellant referred to the fourth element of a prima facie case for negligence as the "case within a case" requirement, and so the Court adopted this terminology. The "case within a case"requirement is the same element as the "but for" test.

5. Appellant also urges this Court to follow the reasoning of the New Jersey Supreme Court in *Conklin v. Hannoch Weisman,* 145 N.J. 395, 678 A.2d 1060 (1996). In *Conklin,* plaintiffs' attorney drafted a contract for the sale of their farm in which their purchase-money mortgage was subordinate to anther mortgage that the buyer would have on the farm. *Id.* 678 A.2d at 1062–63. The attorney, however, never explained to the plaintiffs the consequences of having a subordinate mortgage. The buyers later defaulted on the other mortgage and filed for bankruptcy. *Id.*
 In an opinion that centered around the proper jury instruction for proximate cause, the New Jersey Supreme Court held that in cases where an attorney's negligence did not solely cause the plaintiffs' harm (i.e., the attorney's negligence ·

did not cause the buyer to become insolvent), courts should use the substantial factors test to determine causation. *Id.* at 1071–72.
 As a federal court, "our role is to interpret state law ..., and not to fashion it." *Novak v. Navistar Int'l Transp. Corp.,* 46 F.3d 844, 847 (8th Cir.1995) (citing *Karas v. American Family Ins. Co.,* 33 F.3d 995, 1000 (8th Cir.1994)). ·Appellant, however, has not provided this Court with any Minnesota case law indicating that Minnesota courts would follow *Conklin.* Without more, this Court cannot follow *Conklin* and disregard Minnesota law holding that when a legal malpractice plaintiff claims attorney negligence caused destruction or damage to a cause of action, she must show that but for the attorney's negligence, she would have been successful in the prosecution or defense of a claim. *See First Bank,* 557 N.W.2d at 623.

6. The Eighth Circuit has held that *Fiedler* did not alter the "but for" element of a case of legal malpractice in Minnesota, but was an application of it to a different fact situation. *See Yusefzadeh*

nancial and tax planning to the plaintiffs. *Id.* at 41. After sustaining heavy losses and incurring high tax penalties, they sued their attorney for malpractice. *Id.* The Minnesota Court of Appeals held that the "case within a case" requirement was inapplicable because the plaintiffs "did not assert the destruction of a cause of action." *Id.* at 42. Instead, the plaintiffs claimed that their attorney "negligently withheld information material to their decision to take a specific course of action, and [he] should be liable for the losses suffered as a result of the action taken without the benefit of the undisclosed information." *Id.* In the instant case, Rampy claims that she would have been able to successfully recover her arbitration award against BIC and its principals if Appellees had immediately pursued arbitration, as opposed to taking nine months to obtain an unsecured settlement agreement. Her claim is for the destruction of a recoverable cause of action against BIC and its principals, and therefore, the "case within a case" requirement applies.

■ In order to survive summary judgment, Appellant must create a genuine issue of material fact as to whether but for Appellees' negligence, Rampy would have recovered more from BIC and its principals than she received in settlement payments. After obtaining a new attorney, Rampy won an arbitration award against BIC and its principals for approximately $90,000, but she was unable to recover any of this judgment. The Appellant contends that if the Appellees had pursued timely litigation and arbitration against BIC and its principals, she would have been able to collect on a comparable arbitration award. (*See* Appellant's Mem. in Supp. of Mot. for Summ. J. at 23–24.)

This Court agrees with the Bankruptcy Court that Rampy has failed to present any admissible evidence on this issue.[7] Appellant argues that from 1989 through May 1992,

BIC and its principals received over $109 million dollars from selling limited partnerships. (Appellant's Br. at 12.) Rampy, however, did not approach Messerli about her problems with BIC until May 1992. BIC's income before Messerli began working on this issue for Rampy is not responsive to the issue of what, if anything, Rampy would have been able to recover from BIC after a more timely obtained arbitration award.

As further evidence of the worth of BIC, and inferentially, its ability to collect from it, Appellant contends that BIC was not shut down by the SEC until May 1993, and accordingly it must have met the SEC's net capital requirements as assets until that date.[8] (Appellant's Br. at 13.) It also claims that Hartberg was a licensed NASD broker until December 1994. (Appellant's Br. at 13.) If his name had been on a settlement agreement with Rampy, Appellant maintains that the NASD would have put pressure on him to pay Rampy in disciplinary hearing against him. (*Id.*) The Court finds these arguments purely speculative, and they do not constitute evidence that Rampy would have been successful in collecting on a more timely arbitration award against BIC and its principals.

Thus, this Court concludes that the Bankruptcy Court properly determined that Appellant had failed to create a genuine issue of material fact regarding whether Appellees' negligence actually caused her damages, and therefore, Appellees are entitled to judgment as a matter of law on Appellant's legal malpractice claims.

### Conclusion

Based on the foregoing, and upon all the files, records, and proceedings herein, **IT IS ORDERED** that the Judgment of the Bankruptcy Court, granting Appellees' Motion for

---

*v. Ross,* 932 F.2d 1262, 1264 & n. 4 (8th Cir. 1991); *Gustafson v. Chestnut,* 515 N.W.2d 114, 116 (Minn.Ct.App.1994) (same).

**7.** Appellant has not argued that it presented admissible evidence on this issue. The Court has taken the following evidence from the fact section of her brief.

**8.** Appellant does not explain what these net capital requirements are, but asks the Court to take judicial notice of this fact. (Appellant's Br. at 13.)

Summary Judgment and denying Appellant's Motion is **AFFIRMED.**