*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-1771**

Joel Wells,
Appellant,

vs.

Rick E. Mattox,
Respondent.

**Filed June 13, 2016
Affirmed
Jesson, Judge**

Dakota County District Court
File No. 19HA-CV-14-2062

Keith D. Johnson, Law Offices of Keith D. Johnson, P.L.L.C., Minneapolis, Minnesota
(for appellant)

Rick E. Mattox, Prior Lake, Minnesota (attorney pro se)

Considered and decided by Jesson, Presiding Judge; Kirk, Judge; and Klaphake,
Judge.[*]

# UNPUBLISHED OPINION

**JESSON**, Judge

Appellant Joel Wells argues that the district court erred by dismissing his legal-

malpractice case against his former attorney, respondent Rick Mattox, based on the

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to
Minn. Const. art. VI, § 10.

failure to timely file an expert-witness affidavit under Minn. Stat. § 544.42 (2014) to support his claims. He argues that expert testimony is not required because a lay jury could adequately evaluate his claims for breach of contract, breach of fiduciary duty, and negligent referral. Because Minnesota law does not recognize a cause of action for negligent referral, and because we conclude that affidavit-supported expert testimony is necessary for the determination of appellant's claims, we affirm the district court's order of dismissal.

**FACTS**

In 2001, Wells was charged in Dakota County district court with possession of child pornography. In 2003, he hired Mattox as his attorney. Wells pleaded guilty to that offense as a gross misdemeanor. In 2004, Eagan police searched Wells's home, and he was charged in Dakota County district court with dissemination and possession of child pornography. Mattox again represented Wells, including appealing by certified question a discovery ruling adverse to the defense. *State v. Wells*, No. A06-1942 (Minn. App. Sept. 25, 2007), *review denied* (Minn. Dec. 11, 2007).

In December 2007, Wells was indicted in federal court on charges of possession and receipt of child pornography. Wells hired Mattox to represent him and paid a retainer fee of $30,000. However, in January 2008, Wells retained additional attorneys Daniel Gerdts and Howard Kieffer. Wells alleges that Mattox recommended Kieffer as the best child-pornography attorney in the country. Mattox alleges that he gave Wells several attorney names at Wells's request, but he did not make a legal referral to Kieffer and could have handled the matter himself.

2

In January 2008, on Mattox's motion, Kieffer was admitted pro hac vice to the Minnesota federal district court to assist in Wells's defense; Kieffer was also admitted to the Eighth Circuit Court of Appeals. But, in about May 2008, Wells began to question whether Kieffer was a licensed attorney. An investigation revealed that Kieffer, who had represented at least 18 federal criminal defendants and filed motions in 12 states, had previous felony convictions, and he admitted that he did not have a law degree and was not licensed in any state. Although he was admitted to practice in several federal jurisdictions, they revoked his admission. He was disbarred in North Dakota. In 2009, he was convicted in North Dakota of mail fraud and making false statements to the court; he was also prosecuted in Colorado and sentenced to prison. Wells recovered $10,000 of $37,000 that he had paid to Kieffer.

In June 2008, at Wells's request, Mattox withdrew from representing Wells in the federal proceeding. Wells requested an accounting, which Mattox provided, along with a return of $9,000 in unearned fees from the initial retainer. Wells contended that Mattox breached an agreement to refund Wells an additional $3,500 in fees. In 2009, Wells pleaded guilty in federal court to one count of possessing child pornography; in 2011, he was sentenced to 84 months in prison.

In December 2013, Wells commenced this legal-malpractice action against Mattox. He alleged that Mattox negligently or fraudulently misrepresented to him that photos of naked children who were not engaging in sexual activity did not constitute child pornography, which led Wells to decline a plea offer in the 2004 state proceeding; that Mattox breached a duty of due care by referring Wells to Kieffer without

3

investigating whether Kieffer was licensed or competent as an attorney; and that Mattox breached a contract to refund a full $12,500 in fees, in exchange for Wells's agreement to consent to Mattox's withdrawal.

Mattox filed an answer alleging that the complaint failed to state a claim on which relief could be granted. He asserted that he did not advise Wells that he could possess photographs of naked children; that he did not refer Wells to Kieffer, but Wells chose to hire Kieffer; and that he offered Wells the choice of a $12,500 lump sum or an accounting with a refund of the unearned portion of the flat fee, and Wells chose the latter option. Mattox also alleged that Wells failed to provide affidavits of expert review, as required by Minn. Stat. § 544.42.

In May 2014, Wells moved for an extension of the time to file an expert-identification affidavit under Minn. Stat. § 544.42, subd. 4(a), arguing that he was in solitary confinement and acting pro se and he was unable to contact his expert or provide relevant documentation to that person. He renewed the motion in June 2015 after his release. Mattox moved to dismiss the matter with prejudice for failure to timely file an expert-identification affidavit. He argued that all three counts required expert testimony to establish a prima facie case and pointed out that Wells had been represented by seven attorneys in the federal matter and pleaded guilty to possessing child-pornography videos with explicit sexual content. Mattox also submitted a copy of Wells's initial expert-review affidavit, submitted in January 2014, alleging that an expert had reviewed the case, but he argued that that affidavit was not credible.

4

After a hearing, the district court issued an order and judgment dismissing Wells's claims with prejudice. The district court determined that: (1) although Wells commenced his action in December 2013, through the date of the hearing in August 2015, he had not served, filed, or produced an expert-identification affidavit satisfying statutory requirements; (2) this period was far beyond any statutory deadline; (3) his complaint of lack of access to his case records arose more than six months after he affirmed that an expert had reviewed the case; and (4) his arguments and pleadings lacked credibility. This appeal follows.

**D E C I S I O N**

Wells argues that the district court erred by dismissing his malpractice action against Mattox based on the failure to file an affidavit of expert review because expert testimony is not necessary for consideration of his claims. This court reviews the dismissal of a malpractice action for procedural irregularities, including failure to comply with expert-review requirements, under an abuse-of-discretion standard. *Guzick v. Kimball*, 869 N.W.2d 42, 46 (Minn. 2015). But the issue of whether expert testimony is required to establish a prima facie case in a legal malpractice action presents a question of law, which we review de novo. *Id.* at 46-47.

A prima facie case of legal malpractice requires that a plaintiff establish: (1) the existence of an attorney-client relationship; (2) acts that constitute the alleged negligence or breach of contract; (3) that those acts were the proximate cause of the plaintiff's damages; and (4) that, but for the defendant's conduct, the plaintiff would have been successful in the prosecution or defense of the action. *Id.* at 47. If a plaintiff intends to

use expert testimony to establish a prima facie case of professional malpractice, a party must serve two affidavits of expert review. Minn. Stat. § 544.42, subd. 2. First, if there has been no determination of waiver or good cause, the party must serve an affidavit stating that counsel has reviewed the facts with "an expert whose qualifications provide a reasonable expectation that the expert's opinions could be admissible at trial," and that, in the expert's opinion, "the defendant deviated from the applicable standard of care and by that action caused injury to the plaintiff." *Id.*, subd. 3. Second, within 180 days, the party must serve an affidavit identifying any expert that the party intends to call as a witness, with the substance of that expert's testimony and a summary of the grounds for the expert's opinions. *Id.*, subd. 4. A party acting pro se is subject to the same affidavit requirements as a party represented by an attorney. *Id.*, subd. 5.

"Expert testimony is generally required to establish the standard of care applicable to an attorney whose conduct is alleged to have been negligent and further to establish whether the conduct deviated from that standard." *Jerry's Enters., Inc. v. Larkin, Hoffman, Daly & Lindgren, Ltd.*, 711 N.W.2d 811, 817 (Minn. 2006) (quotation omitted). But this general rule is subject to the exception that, when a lay jury can adequately evaluate the attorney's conduct without an expert opinion, expert testimony is not necessary. *Hill v. Okay Constr. Co.*, 312 Minn. 324, 337, 252 N.W.2d 107, 116 (1977). Whether expert testimony is required in a legal-malpractice action depends on the nature of the question that the trier of fact must decide and on whether specialized or technical knowledge will assist in that decision. *Fontaine v. Steen*, 759 N.W.2d 672, 677 (Minn. App. 2009).

Wells argues that he was not required to serve expert-review affidavits under section 544.42 because each of his malpractice claims could be adequately evaluated by a jury without expert testimony. We address each claim in turn.

*Negligent referral*

Wells first argues that expert testimony is not required for a jury to consider his claim that Mattox negligently referred Wells to Kieffer. But this argument presupposes that Minnesota law recognizes a legal-malpractice cause of action based on an attorney's negligent referral of a client to another attorney.[1] As discussed below, we conclude that current Minnesota law does not recognize such a cause of action and that, even if it did, expert-review affidavits would be necessary to support the claim.

Under the common law, a party generally owes no duty to warn or protect another person who may be injured by a third party unless the "defendant stands in some special relationship to either the person whose conduct needs to be controlled or to the foreseeable victim of that conduct." *Cairl v. State*, 323 N.W.2d 20, 25 n.7 (Minn. 1982). Special relationships imposing such a duty include parent-child, common carrier-passenger, master-servant, landowner-invitee, and certain custodianships. *Olson v. Ische*, 343 N.W.2d 284, 288 (Minn. 1984). But Minnesota has not extended this reasoning to hold an attorney liable in negligence for referring a client to another lawyer, who then commits malpractice.

---

[1] While Kieffer held himself out as an attorney and was admitted to practice before federal courts in several states, the fact that he was not licensed in any state does not change our analysis since the standard of care (if applicable) focusses on the *referring* attorney's knowledge and conduct. *See generally* 1 Ronald E. Mallen, *Legal Malpractice*, § 5.51, at 583 (2016 ed.).

Wells urges this court to adopt the reasoning of the New Jersey federal district court, which has held that an attorney who refers a matter to another attorney has an affirmative duty to exercise care to ensure that the second attorney is competent and trustworthy. *Tormo v. Yormark*, 398 F. Supp. 1159, 1169-70 (D.N.J. 1975). In the 40 years since *Tormo*, few appellate courts have ruled on whether a cause of action exists for negligent referral by an attorney.[2] Those that have, have taken various approaches to the issue. *See, e.g.*, *Christensen, O'Connor, Garrison & Havelka v. State*, 649 P.2d 839, 842 (Wash. 1982) (holding that "[r]eferring law firms are neither liable to their clients for . . . malpractice nor can they recover from the engaged law firm for such malpractice"); *Noris v. Silver*, 701 So.2d 1238, 1241 (Fla. Dist. Ct. App. 1997) (affirming dismissal of a negligent-referral claim when the referring attorney did not know that the referred attorney would commit malpractice, but noting possibility of liability based on fee-splitting). New York courts have taken a flexible approach, concluding that liability depends on such factors as whether the referring and receiving attorneys practice in the same state or the same subject area and whether the referring attorney has an ongoing supervisory role. *Compare Broadway Maint. Corp. v. Tunstead & Schecter*, 487

---

[2] Several commentators have discussed the policy issues inherent in imposing such liability. *See generally* Bruce Ching, *Attorney Referral, Negligence, and Vicarious Liability*, 33 S. Ill. U. L.J. 217, 223 (2009) (noting that courts in Michigan and Pennsylvania have expressly declined to impose liability for negligent referral); Barry R. Temkin, *Can Negligent Referral to Another Attorney Constitute Legal Malpractice?*, 17 Touro L. Rev. 639 (2001) (observing that although an attorney must use due care in the selection of outside counsel, standard of care for that obligation in New York is minimal); Andrew W. Martin, Jr., *Legal Malpractice: Negligent Referral as a Cause of Action*, 29 Cumb. L. Rev. 679, 699-700 (1999) (discussing proposed standard for breach of duty of care as knowledge that the referred attorney is likely to commit malpractice).

8

N.Y.S.2d 799, 800-01 (App. Div. 1985) (holding that, in the absence of assuming a supervisory role, general counsel could not be held liable for malpractice in connection with its referral to out-of-state trial counsel, who failed timely to commence a lawsuit) *with Reed v. Finkelstein, Levine, Gittlesohn & Tetenbaum*, 756 N.Y.S.2d 577, 578 (App. Div. 2003) (holding that an issue of fact existed as to referring attorneys' responsibilities in malpractice action when they practiced in the same state and specialized in that same subject area as referred attorney).

No Minnesota case addresses this cause of action. The Minnesota Rules of Professional Conduct provide that it is professional misconduct for an attorney to "knowingly assist or induce another to [violate the rules], or do so through the acts of another," Minn. R. Prof. Conduct 8.4 (a). But "[v]iolation of a rule should not itself give rise to a cause of action against a lawyer nor should it create any presumption in such a case that a legal duty has been breached." Minn. R. Prof. Conduct preamble cmt. 20. "Whether a lawyer may be liable civilly or criminally for another lawyer's conduct is a question of law beyond the scope of these rules." Minn. R. Prof. Conduct 5.1 cmt. 7.

We recognize that "[the supreme] court has the power to recognize and abolish common law doctrines . . . as well as to define common law torts and their defenses." *Larson v. Wasemiller*, 738 N.W.2d 300, 303 (Minn. 2007). But the task of examining these policy considerations and potentially extending existing law falls to the supreme court or the legislature, not to this court. *Tereault v. Palmer*, 413 N.W.2d 283, 286

(Minn. App. 1987), *review denied* (Minn. Dec. 18, 1987).[3]  With this background, we cannot conclude that current Minnesota law authorizes a cause of action based on an attorney's negligent referral.

We further note that, even if a cause of action for negligent referral did exist in Minnesota, it would require expert testimony to establish the standard of care and its breach.  If such a cause of action applies, the standard of care for an attorney referring to another lawyer "depends upon the circumstances of the particular subject matter" and requires "facts [indicating] that the lawyer knew or should have known that the referral was not appropriate."  Mallen*, supra*, § 5.51, at 583.  Without expert testimony, it is difficult to establish the scope of an attorney's duty to investigate the background of another attorney to whom a referral is made.  An expert affidavit must also "include an outline of the chain of causation between the violation of the standard of care and the plaintiff's damages."  *Tefeteller v. Univ. of Minn.*, 645 N.W.2d 420, 428 (Minn. 2002).  Therefore, in this case Wells would be required to produce expert testimony showing that he incurred damages resulting from Mattox's referral of Kieffer to handle his criminal case.  Because current Minnesota law does not provide for recovery on Wells's negligent-referral claim and an expert affidavit would be necessary if a cause of action did exist, the district court did not err by dismissing it.

---

[3] To expand the law to include a cause of action for negligent referral by an attorney would require examination of a host of policy considerations.  Should an attorney with specialized skills be held to a higher standard of care?  Should out-of-state referrals be treated differently?  How should the greater accessibility of information via the internet factor into a potential duty?  Would a new, broad duty have the consequence of fewer referrals by attorneys, which could create hardships for clients?

10

*Breach-of-fiduciary-duty / constructive-fraud claim*

Wells also asserts a breach-of-fiduciary-duty claim based on constructive fraud against Mattox. He alleges that Mattox breached a fiduciary duty by misinforming him that, under Minnesota law, material depicting naked children who are not engaged in sexual conduct does not constitute child pornography and that Mattox was "100% sure" that Wells would prevail at trial. Wells argues that, based on that misinformation, he declined a plea offer in the earlier state court proceeding and chose to continue with his case.

An attorney owes a fiduciary duty "to represent the client with undivided loyalty, to preserve the client's confidences, and to disclose any material matters bearing upon the representation of these obligations." *Rice v. Perl*, 320 N.W.2d 407, 410 (Minn. 1982) (alteration in original) (quotation omitted). The term "constructive fraud" is essentially another way to characterize a breach of fiduciary duty, which is not actual fraud, "but conduct that the law treats as fraud, irrespective of the actor's intent or motive." *Perl v. St. Paul Fire & Marine Ins. Co.*, 345 N.W.2d 209, 213 (Minn. 1984). A claim for breach of fiduciary duty is closely related to a claim of professional negligence and requires a plaintiff to demonstrate a fiduciary duty, breach of that duty, causation, and damages. *See Padco, Inc. v. Kinney & Lange*, 444 N.W.2d 889, 891 (Minn. App. 1989) (holding that a complaint alleging the elements of a legal malpractice claim sufficiently alleged the elements of a breach-of-fiduciary-duty claim), *review denied* (Minn. Nov. 15, 1989). Therefore, Wells's breach-of-fiduciary-duty claim essentially restates his malpractice claim in another form.

11

Wells maintains that Mattox failed to disclose to him that the Minnesota child-pornography statute prohibits materials depicting the "lewd exhibition of the genitals" of minors, even if the minors are not engaged in sexual activity. *See* Minn. Stat. § 617.246, subd. 1(e)(4) (2004). And he argues that the plain meaning of that statute may be readily understood by a lay jury, so that expert testimony is not required for consideration of his breach-of-fiduciary-duty claim.[4] But to succeed on that claim, Wells must establish that Mattox's discussions with him breached an attorney's standard of care for communicating with a client. Wells alleges, among other things, that Mattox represented that Wells would prevail at trial. The standard of care relating to an attorney's communication with a client is a subject for expert testimony. *Schmitz v. Rinke, Noonan, Smoley, Deter, Colombo, Wiant, Von Korff & Hobbs, Ltd.*, 783 N.W.2d 733, 739-40 (Minn. App. 2010), *review denied* (Minn. Sept. 21, 2010). The issue of whether Mattox breached the standard of care in his communications with Wells, including advising him in the context of plea negotiations, requires expert testimony to help the fact-finder resolve the case.

Wells acknowledges that expert testimony may be necessary to prove proximate causation. *See, e.g.*, *Fiedler v. Adams*, 466 N.W.2d 39, 42-43 (Minn. App. 1991) (noting expert testimony on proximate causation when plaintiffs asserted that attorney negligently withheld information material to their decision to pursue or abstain from a

---

[4] Mattox argues that this claim raises the issue of whether he provided constitutionally ineffective assistance. While ineffective-assistance and legal-malpractice claims are closely related in the criminal context, they serve different purposes, and a determination that ineffective assistance was provided is not conclusive as to a legal-malpractice claim in a civil case. *Noske v. Friedberg*, 670 N.W.2d 740, 746 (Minn. 2003).

certain course of action), *review denied* (Minn. Apr. 29, 1991).  He argues, however, that "[b]y limiting his claim for damage for this breach of fiduciary duty and constructive fraud to the forfeiture of fee compensation, attorney expert opinion is unnecessary."  But he cites no authority for this proposition.  "When a claim is predicated on conduct subject to a professional standard of care, expert evidence is generally required to support the claim."  *Blatz v. Allina Health Sys.*, 622 N.W.2d 376, 388 (Minn. App. 2001), *review denied* (Minn. May 16, 2001).  Because Wells's breach-of-fiduciary-duty claim requires expert evidence on the standard of care for an attorney's communication with a client, we conclude that the district court did not abuse its discretion by dismissing this claim based on failure to file an expert affidavit.

### Breach-of-contract claim

Finally, Wells alleges that Mattox committed legal malpractice by breaching a contract to repay Wells an additional $3,500 as a partial refund of Mattox's retainer fee, after Wells agreed to allow Mattox to withdraw from representing him in the federal criminal proceeding.  Wells argues that this claim could adequately be considered by a lay jury without expert testimony because it is a simple claim for breach of contract.

We disagree.  Mattox's answer alleges that, instead of a $3,500 lump sum, Wells chose a refund for the unearned portion of the flat fee, and that refund was based on an accounting.  The resolution of the breach-of-contract claim requires an examination of that accounting, which implicates Mattox's performance in earning or incurring fees during his representation of Wells.  *See* Minn. R. Prof. Conduct 1.16(d) (stating that when an attorney's representation is terminated, the attorney shall "refund[] any advance

13

payment of fees or expenses that has not been earned or incurred"). Here, the alleged accounting and ethical violations are intertwined. The Minnesota Lawyers Professional Responsibility Board considered complaints filed by Wells and his girlfriend against Mattox and dismissed those complaints. Although the record does not contain the confidential terms of those proceedings, Wells alleges that they involved the terms of Mattox's representation, and he told the district court that the Board determined that he should be reimbursed $9,000. We conclude that, on this record, where accounting and ethical claims intermix, Wells's claim falls within the general rule that expert testimony is required in legal-malpractice actions.[5] *See Jerry's Enters., Inc.*, 711 N.W.2d at 817. Therefore, the district court did not abuse its discretion by dismissing this claim based on failure to timely file an expert affidavit.

Because no cause of action exists in Minnesota for legal malpractice based on a lawyer's referral to another attorney and all of his claims require expert testimony, the district court did not abuse its discretion by dismissing Wells's claims.

**Affirmed.**

---

[5] Although there is a distinction between an ethical claim and the existence of a malpractice cause of action, a lawyer's violation of a rule of professional conduct may "'be evidence of breach of the applicable standard of conduct'" to support a malpractice claim. *Leonard v. Dorsey & Whitney LLP*, 553 F.3d 609, 628 (8th Cir. 2009) (quoting Minn. R. Prof. Conduct, Scope).

14