Timothy GUZICK, as Personal Representative of the Estate of George J. Nyberg and as Trustee of the George Nyberg Trust, Respondent,

v.

Larry KIMBALL, et al., Appellants.

Colleen Bennett, Defendant.

No. A14–0429.

Supreme Court of Minnesota.

Aug. 31, 2015.

Steven R. Peloquin, Peloquin Law Office, Perham, MN; and

Michael T. Feichtinger, Cally R. Kjellberg–Nelson, Quinlivan & Hughes, P.A., Saint Cloud, MN, for respondent.

Nicholas Ostapenko, Roy J. Christensen, Michele L. Miller, Johnson, Killen & Seiler P.A., Duluth, MN, for appellants.

Charles E. Lundberg, Mark R. Bradford, Christine E. Hinrichs, Bassford Remele, P.A., Minneapolis, MN, for amicus curiae Minnesota Defense Lawyers Association.

Thomas D. Jensen, William L. Davidson, Lind, Jensen, Sullivan & Peterson, P.A., Minneapolis, MN, for amicus curiae Professional Liability Defense Federation.

## OPINION

ANDERSON, Justice.

A personal representative/trustee filed a complaint alleging legal malpractice against an attorney and his law firm relating to a power of attorney drafted by the attorney's legal assistant. The district court granted the attorney's motion to dismiss, holding that the personal representative/trustee failed to provide a satisfactory expert disclosure on each element of a prima facie case of legal malpractice, in violation of Minn.Stat. § 544.42, subd. 4(a)

(2014). The district court also held, applying our decision in *Brown–Wilbert, Inc. v. Copeland Buhl & Co.*, 732 N.W.2d 209 (Minn.2007), that the disclosure was insufficient to qualify for the statute's safe-harbor protection under Minn.Stat. § 544.42, subd. 6(c) (2014). A divided court of appeals reversed and remanded, holding that expert testimony was not needed to establish but-for causation or the existence of an attorney-client relationship, and that for the two other elements for which an expert was necessary, the expert disclosure satisfied the minimum requirements of *Brown–Wilbert.*

Contrary to the court of appeals, we hold that the personal representative/trustee's expert disclosure on proximate cause was insufficient under *Brown–Wilbert.* Therefore, the district court did not abuse its discretion when it dismissed the legal malpractice claim under Minn.Stat. § 544.42, subd. 6(c). We reverse.

## I.

In April 2013, respondent Timothy Guzick, as Personal Representative of the Estate of George Nyberg and as Trustee of the George Nyberg Trust, filed a complaint against appellant Larry Kimball, an attorney, and appellant Kimball Law Office. The facts alleged in the complaint are as follows.

In 2008, Louis Nyberg, Jr. ("Tony") asked Colleen Bennett to prepare a power of attorney form ("POA") authorizing Tony to act as attorney-in-fact for his uncle, George Nyberg ("George"). Bennett was a legal assistant for Larry Kimball, who practiced law at Kimball Law Office. Bennett printed a copy of the Minnesota Standard Short Form Power of Attorney ("Short Form") and gave it to Tony to give to George. Later, at George's house, Bennett showed George where to sign and then notarized his signature. The Short Form used by Bennett had automatically placed a checkmark on all lines, including: "This power of attorney authorizes the attorney-in-fact to transfer my property to the attorney-in-fact." The Short Form included a disclosure that it had been drafted by Kimball Law Office, and Kimball Law Office billed George for preparing the document. Bennett never asked George if he had read the form, and never discussed with George the level of authority that George sought to grant to Tony. Kimball, Bennett's supervisor, never reviewed the POA or met with George to talk about the POA.

After George was hospitalized in early 2009, Tony went to Wells Fargo to add his name as a joint owner with a right of survivorship on two of George's accounts. Tony provided Wells Fargo with the POA, and Wells Fargo consented to Tony's request. Allegedly, George did not intend for Tony to be a joint owner of his accounts with a right of survivorship. Tony transferred money into the now-jointly owned accounts from other accounts owned by George and his trust, and in turn transferred some of those funds to accounts owned by Tony and Tony's wife. George died several days later. Both before and after George's death, Tony transferred a total of $226,524 to his and his wife's accounts.

Guzick, the personal representative of George's estate and trustee of George's trust, brought a conversion action against Tony and his wife. Tony and his wife then filed for bankruptcy. Guzick was awarded a judgment against Tony in Tony's bankruptcy proceeding. Guzick also brought an action against Wells Fargo.

Guzick then filed suit against Kimball and Kimball Law Office (collectively "Kim-

ball").[1] Guzick alleged a single count of legal malpractice against Kimball under two theories. Guzick first alleged that Kimball had a duty to supervise Bennett and ensure that her conduct and work product were "compatible with [Kimball's] professional obligations." Second, Guzick alleged that Kimball had a duty to meet and talk with George to assess George's need for a POA, to assess George's competency, to explain the scope of authority granted under the POA, to discuss the risks associated with that authority, and to determine whether Tony was the appropriate person to be named as George's attorney-in-fact.

As required by Minn.Stat. § 544.42, subd. 2(1) (2014), Guzick served an affidavit of expert review with the complaint. Guzick's affidavit stated that his expert had reviewed the facts alleged in the complaint, that the expert's qualifications "provide[d] a reasonable expectation that her opinions would be admissible at trial," and that the expert's opinion was that "Kimball deviated from the applicable standard of care, and by that action caused damages."

The affidavit also identified, in the expert's opinion, 10 different acts committed by Kimball that deviated from the standard of care and caused damages: (1) failure to supervise Bennett in drafting the POA; (2) failure to have in effect measures to provide reasonable assurance of the quality of Bennett's conduct and work; (3) failure to meet with George to assess his need and desire for a POA; (4) failure to meet with George to assess his ability to understand the POA; (5) failure to meet with George to ensure that he was not acting under undue influence or duress;

(6) failure to explain the scope of authority provided by the POA; (7) failure to discuss the risks of granting the attorney-in-fact the broad powers in the POA; (8) failure to assess whether Tony was the appropriate individual to be named as attorney-in-fact; (9) failure to discuss with George which lines should be checked on the statutory Short Form POA; and (10) failure to send the draft of the POA to George's residence to assure that he received it unaltered.

Guzick did not provide an affidavit of expert disclosure. But in response to one of Kimball's interrogatories about expert witnesses, Guzick stated that he had retained Susan E. Johnson–Drenth as an expert, and referred Kimball to his affidavit of expert review for a summary of her opinion.

In September 2013 Kimball moved, pursuant to Minn. R. Civ. P. 56 and Minn.Stat. § 544.42 (2014), for "entry of summary judgment dismissing [Guzick's] claims." Kimball argued that Guzick failed to provide a satisfactory affidavit of expert disclosure within 180 days of commencement of the lawsuit, as required by Minn.Stat. § 544.42, subd. 2(2), and that Guzick did not qualify for subdivision 6's curative provision. Kimball argued that Guzick was required to use an expert to establish all four elements of a prima facie case of legal malpractice: the existence of an attorney-client relationship, acts constituting negligence, proximate causation, and but-for causation, see *Blue Water Corp. v. O'Toole*, 336 N.W.2d 279, 281 (Minn.1983), and that for each of those elements, Guzick's disclosure failed to comply with subdivision 4,

---

1. Guzick later amended the complaint to include two more defendants: Kimball's previous law firm, Kimball and Undem, and the legal assistant, Bennett. Guzick alleged the same legal malpractice claim against Kimball and Undem as he had alleged against Kimball and Kimball Law. As for Bennett, Guzick alleged one count of negligence relating to the preparation of the POA. Bennett later successfully moved for summary judgment, an issue not before us.

which requires disclosure of "the facts and opinions to which the expert is expected to testify, and a summary of the grounds for each opinion." Minn.Stat. § 544.42, subd. 4(a).

In response, Guzick argued that his original affidavit of expert review, to which he referred in answering Kimball's interrogatories, complied with subdivision 4 for the elements actually required to be established by an expert. In the alternative, Guzick argued that his affidavit was sufficient to qualify for safe-harbor protection.

The district court granted Kimball's motion and dismissed the claim with prejudice. The district court first held that expert testimony is required to establish all four elements of Guzick's malpractice claim. The court held that Guzick's affidavit of expert review did not comply with subdivision 4 for any of the elements of the prima facie case, as Guzick's affidavit consisted of "restatements of the facts and broad, conclusory statements." The court also held that Guzick's affidavit did not qualify for subdivision 6's safe harbor because it was "grossly deficient" under *Brown–Wilbert,* 732 N.W.2d at 217–19.

Guzick appealed, and the court of appeals reversed and remanded. *Guzick v. Kimball,* No. A14–0429, 2014 WL 4957973, at *10–11 (Minn.App. Oct. 6, 2014). Guzick did not challenge the district court's holding that an expert was required to establish the "acts constituting negligence" element. For the remaining elements, the court of appeals held that expert opinion was required to establish the "proximate causation" element, but not the "existence of an attorney-client relationship" or "but-for causation" elements. *Id.* at *3–4. The court of appeals further held that, for the

two elements required to be established by an expert, Guzick submitted an affidavit that was "sufficient to satisfy the minimum expert-disclosure requirements identified in *Brown–Wilbert.*" *Id.* at *11.

The court of appeals' dissent concluded that an expert was required to establish but-for causation, asserting that the case did not present "one of those rare or exceptional legal-malpractice cases in which the plaintiff should be relieved of the requirement to introduce expert evidence to prove causation." *Id.* at *11 (Johnson, J., dissenting). The dissent also concluded that the expert disclosure on both forms of causation was not sufficient to satisfy *Brown–Wilbert,* asserting that the disclosure "could not possibly be any more conclusory or any less meaningful." *Id.* at *13.

We granted Kimball's petition for review.

## II.

Kimball asks us to reverse the court of appeals and hold that an expert was necessary to establish each element of Guzick's prima facie case, and that Guzick's disclosure failed to meet the *Brown–Wilbert* standard for any of the prima facie elements.

 We "review a district court's dismissal of an action for procedural irregularities under an abuse of discretion standard."[2] *Brown–Wilbert,* 732 N.W.2d at 215. But to the extent the dismissal involves interpreting Minn.Stat. § 544.42 (2014), we apply de novo review. *Brown–Wilbert,* 732 N.W.2d at 215. Further, whether expert testimony is required to establish a prima facie case is a question of

---

**2.** Although the parties, the district court, and the court of appeals labeled the motion as one for summary judgment, it is more accurately described as a motion for "statutory dismissal for procedural reasons." *See Sorenson v. St. Paul Ramsey Med. Ctr.,* 457 N.W.2d 188, 189 n. 1 (Minn.1990).

law that we review de novo. *See Tousignant v. St. Louis Cty.*, 615 N.W.2d 53, 58 (Minn.2000) (reviewing de novo such an issue in a medical malpractice case).

■ A prima facie case of legal malpractice requires a plaintiff to establish four things: "(1) the existence of an attorney-client relationship; (2) acts constituting negligence or breach of contract; (3) that such acts were the proximate cause of the plaintiff's damages; [and] (4) that but for defendant's conduct the plaintiff would have been successful in the prosecution or defense of the action." *Blue Water Corp., Inc. v. O'Toole*, 336 N.W.2d 279, 281 (Minn. 1983).

If "expert testimony is to be used by a party to establish a prima facie case," a plaintiff in a professional malpractice suit must provide two affidavits. Minn.Stat. § 544.42, subd. 2; *see also* Minn.Stat. § 544.42, subd. 1(1) (defining a "professional" as "a licensed attorney or an architect, certified public accountant, engineer, land surveyor, or landscape architect"). The first affidavit, the expert review affidavit, generally must be served upon the defendant with the pleadings, Minn.Stat. § 544.42, subd. 2(1), and must contain a statement that, "in the opinion of [the] expert, the defendant deviated from the applicable standard of care and by that action caused injury to the plaintiff," Minn. Stat. § 544.42, subd. 3(a)(1). The second affidavit, the expert disclosure affidavit, must be served upon the opponent within 180 days of the commencement of discovery, Minn.Stat. § 544.42, subd. 2(2),[3] and must:

> be signed by the party's attorney and state the identity of each person whom

the attorney expects to call as an expert witness at trial to testify with respect to the issues of negligence, malpractice, or causation, the substance of the facts and opinions to which the expert is expected to testify, and a summary of the grounds for each opinion. Minn.Stat. § 544.42, subd. 4(a). The expert disclosure affidavit requirement may also be satisfied by answers to interrogatories instead of a formal affidavit. Minn.Stat. § 544.42, subd. 4(a). The issue presented here is the sufficiency of the expert disclosure.

If a plaintiff fails to serve an expert disclosure affidavit or answers to interrogatories that satisfy subdivision 4(a) within 180 days, the defendant may move for mandatory dismissal "of each action with prejudice as to which expert testimony is necessary to establish a prima facie case." Minn.Stat. § 544.42, subd. 6(c). But the statute provides a "safe harbor" that requires the court, before granting such a motion to dismiss, to: (1) give the plaintiff notice of the deficiencies of the affidavit; and (2) give the plaintiff 60 days to cure those deficiencies. *Id.*

In order to give life to the second affidavit requirement, we have read a limitation into the safe-harbor provision of Minn. Stat. § 544.42, subd. 6(c). In *Brown–Wilbert, Inc. v. Copeland Buhl & Co.*, an accounting malpractice case, we held that, to qualify for the safe harbor, a disclosure must "provide some meaningful information, beyond conclusory statements." 732 N.W.2d 209, 219 (Minn.2007). We reasoned that "an affidavit may be sufficient to satisfy the 180–day requirement even though it contains minor deficiencies," as the statute contains a "cure provision."

---

**3.** The statute has been amended since the disclosure affidavit was served in this case, to require such an affidavit to be served within 180 days of commencement of discovery. *See* Act of April 3, 2014, ch. 153, § 3, 2014 Minn.

Laws 110, 111 (codified as amended at Minn. Stat. § 544.42, subd. 2(2) (2014)). This amendment does not affect the analysis of this case.

*Id.* at 217. But we also reasoned that "an affidavit is not sufficient ... if the deficiencies are so great that it provides no significant information," as "[a]ny other interpretation would render the 180–day requirement meaningless." *Id.* at 217–18. Thus, we held that, to satisfy the 180–day requirement of section 544.42, subdivision 2(2), and qualify for safe-harbor protection under section 544.42, subdivision 6(c), an expert disclosure must meet the following "minimum standards":

> (1) identif[y] each person the attorney expects to call as an expert; (2) describe[ ] the expert's opinion on the applicable standard of care, as recognized by the professional community; (3) explain[ ] the expert's opinion that the defendant departed from that standard; and (4) summarize[ ] the expert's opinion that the defendant's departure was a direct cause of the plaintiff's injuries.

*Brown–Wilbert,* 732 N.W.2d at 219.

The first requirement for a minimally sufficient disclosure we identified in *Brown–Wilbert*—identity—is satisfied here. In response to Kimball's interrogatory, which asked Guzick to "[i]dentify each expert witness whom you expect to call ... as a witness at trial," Guzick answered that he had retained "Susan E. Johnson–Drenth," and referred Kimball to the affidavit of expert review filed with the

complaint.[4] This response was given less than two months after the complaint was filed, and was clearly within the 180–day limit.

The other three requirements we identified in *Brown–Wilbert* are the prima facie elements of an accounting malpractice case. *Brown–Wilbert* should not be read to require each of the latter three requirements in every professional malpractice case. *See Brown–Wilbert,* 732 N.W.2d at 218 (stating that "expert testimony is *generally* required") (emphasis added); *see also Wartnick v. Moss & Barnett,* 490 N.W.2d 108, 116 (Minn.1992) (stating that, for the element of breach of duty, expert testimony is "[g]enerally" required, "unless the conduct can be evaluated by a jury in the absence of expert testimony"). Indeed, the statute requires that in a professional malpractice action "where expert testimony *is to be used by a party to establish a prima facie case,*" Minn.Stat. § 544.42, subd. 2 (emphasis added), the party must submit an expert disclosure affidavit with respect to the "issues of negligence, malpractice, *or* causation." [5] Minn.Stat. § 544.42, subd. 4(a) (emphasis added). Thus, whether a plaintiff is required to make an expert disclosure is something that must be determined on a case-by-case basis for each element of

4. Kimball argues that Guzick's expert review affidavit cannot also serve as the expert disclosure affidavit. It is at least conceivable that a carefully drawn and detailed expert review affidavit could also qualify as an expert disclosure affidavit. We need not, and do not, decide that issue here.

5. Kimball argues that expert testimony is always required to establish the existence of an attorney-client relationship when the evidence of the relationship is disputed. We have never held that expert testimony is necessarily required to establish the existence of an attorney-client relationship. It is, of course, conceivable that expert disclosure

may be necessary on this first element of a legal malpractice claim. *See* Minn.Stat. § 544.42, subd. 6(c) (stating that a motion to dismiss may be granted only with respect to each action "as to which expert testimony is necessary to establish a prima facie case"). But it is also possible to posit circumstances that establish sufficient evidence of an attorney-client relationship without resorting to expert witness testimony. But because we conclude that Guzick's disclosure was insufficient as to proximate cause, we need not, and do not, decide whether an expert was required to establish the existence of an attorney-client relationship in this case.

the prima facie case of malpractice. If expert disclosure is required for a particular element, we must then determine whether the party's disclosure for that element satisfied the "meaningful disclosure" requirement of *Brown–Wilbert*.

We have discussed whether expert testimony is required for the elements of a legal malpractice case on only a few occasions. The issue first appeared in *Hill v. Okay Construction Co.*, 312 Minn. 324, 335–36, 252 N.W.2d 107, 116 (1977). Borrowing from medical malpractice precedent, we articulated the general rule that the "duty" and "breach" elements of attorney malpractice, also known as "acts constituting negligence," must be established by expert testimony:

> Expert testimony should be generally required to establish the standard of care applicable to an attorney whose conduct is alleged to have been negligent and further to establish that his conduct deviated from that standard. That general rule should be subject to the exception that such expert testimony is not necessary in cases where the conduct complained of can be evaluated adequately by a jury in the absence of expert testimony.

*Id.* at 337, 252 N.W.2d at 116. We held that the act constituting negligence in the case—the approval of financial profiles—was an exception and did not need to be established by expert opinion. *Id.* at 337–38, 252 N.W.2d at 116–17.

In *Wartnick v. Moss & Barnett*, we reiterated the holding of *Hill* and stated that expert testimony is generally required to establish both the applicable standard of care and breach of that standard, "unless the conduct can be evaluated by a jury in the absence of expert testimony." 490 N.W.2d 108, 116 (Minn.1992). Similarly, in *Admiral Merchants Motor Freight, Inc. v. O'Connor & Hannan*, we stated that "[e]x-

pert testimony generally is required to establish a standard of care applicable to an attorney whose conduct is alleged to have been negligent, and further to establish whether the conduct deviated from that standard." 494 N.W.2d 261, 266 (Minn.1992). We, in turn, quoted *Admiral Merchants* in *Jerry's Enterprises, Inc. v. Larkin, Hoffman, Daly & Lindgren, Ltd.* to "generally require[ ]" expert testimony regarding duty and breach of duty. 711 N.W.2d 811, 817 (Minn.2006).

We have never required expert testimony on the other elements of a prima facie case of legal malpractice. *Brown–Wilbert*, an accounting malpractice case, credited *Admiral Merchants*, a legal malpractice case, as "stating that expert testimony is generally required to establish the standard of care applicable to legal malpractice, whether the attorney deviated from that standard, and *whether that deviation caused the plaintiff's injury.*" *Brown–Wilbert*, 732 N.W.2d at 218 (emphasis added). But in *Admiral Merchants* we only stated that "[e]xpert testimony generally is required to establish a standard of care applicable to an attorney whose conduct is alleged to have been negligent, and further to establish whether the conduct deviated from that standard." 494 N.W.2d at 266 (citing *Hill*, 312 Minn. at 337, 252 N.W.2d at 116). In fact, in that case the plaintiff, Admiral Merchants, presented expert testimony "that the alleged failure to request arbitration was negligent," not that the negligent act caused the injury. *Id.* Even in the absence of expert testimony on causation, we concluded a genuine issue of material fact existed and reversed the district court's grant of summary judgment in favor of the law firm. *Id.* at 267.

Here, the parties do not dispute that an expert was required to establish the acts constituting negligence and proximate causation elements, but dispute whether an

expert was required on the but-for causation and existence of an attorney-client relationship elements. The parties further dispute whether Guzick made an expert disclosure that satisfied *Brown–Wilbert*'s standard for but-for causation, proximate causation, and the existence of an attorney-client relationship.

### III.

We first consider but-for causation. Kimball argues that the court of appeals "unilaterally rewrote malpractice law" when it concluded that expert testimony was not required to establish but-for causation, as this is not a "rare" exempt case. Kimball argues that it would not be within the competence of a jury—absent expert testimony—to determine whether George would have signed the POA but for Kimball's alleged negligent acts. Guzick responds that but-for causation is not even necessary in this case, as it does not involve damage to or loss of a cause of action.

Guzick's claim that he need not establish but-for causation is wrong. When a case does not involve damage to or loss of a cause of action, but instead involves transactional malpractice, we have modified the but-for element to require a plaintiff to show that, "but for defendant's conduct, the plaintiff would have obtained a more favorable result in the underlying transaction than the result obtained." *Jerry's Enters.*, 711 N.W.2d at 819.

On the other hand, Kimball and the court of appeals are mistaken when they claim that, for but-for causation in a legal malpractice case, "[o]nly the 'rare' or 'exceptional' case is capable of resolution without expert testimony." *Guzick*, 2014 WL 4957973 at *3. We have never addressed the need for expert testimony on but-for causation in a legal malpractice claim. The case cited by the court of

appeals for that proposition, *Fontaine v. Steen*, 759 N.W.2d 672, 677 (Minn.App. 2009), relied on *Sorenson v. St. Paul Ramsey Medical Center*, 457 N.W.2d 188, 191 (Minn.1990). *Sorenson* is a medical malpractice case, meaning it has limited applicability to a legal malpractice case. *See Tousignant v. St. Louis Cty.*, 615 N.W.2d 53, 58 (Minn.2000) (stating that the requirement of expert testimony to establish medical malpractice and causation "is based on the assumption that most medical malpractice cases involve complex issues of science or technology, requiring expert testimony to assist the jury in determining liability"). Although legal malpractice claims may involve complex causation issues, "complex issues of science or technology" are generally not found in legal malpractice cases.

Instead of relying on a general rule, we analyze whether the facts needed to establish but-for causation are within an area of common knowledge and lay comprehension such that they can be adequately evaluated by a jury in the absence of an expert. *Hill*, 312 Minn. at 337, 252 N.W.2d at 116. With this standard in mind, there are two prominent links in the chain of causation here. The first is whether, but for Kimball's negligent acts, the POA would not have been overbroad. The second is whether, but for the overbroad POA, George's funds would not have been converted.

To find but-for causation for the first causal link a jury would need to determine whether, but for Kimball's failure to supervise Bennett and meet with George, the POA would not have been overbroad. This chain of evidence could be adequately evaluated by a jury in the absence of expert testimony. To determine what George wanted or would have wanted after

receiving competent legal counsel,[6] the jury could examine his estate planning documents and any contemporaneous communications he made to Bennett or others regarding his intentions with the POA.

To find but-for causation for the second causal link the jury would need to determine whether, but for the overbroad POA, Tony would not have converted George's funds. This could be answered by the POA itself (whether the POA gave Tony the ability to transfer funds), and by Tony and Wells Fargo concerning Tony's conversion (whether Tony relied on the POA to transfer funds). None of this information is so complex that it requires an expert to explain it. Thus, Guzick was not required to make an expert disclosure on but-for causation.

## IV.

◼ Kimball agrees with the court of appeals that an expert was required to establish proximate causation, and Guzick does not dispute this. Thus, because an expert was required to establish proximate cause, we must determine whether Guzick's expert disclosure satisfied *Brown–Wilbert* to qualify for safe-harbor protection. The court of appeals held that it did. "By identifying the standard of care, the manner in which respondents breached that standard, and the injuries suffered by appellant, the affidavit necessarily implies that the injuries arising from the breaches were foreseeable." *Guzick*, 2014 WL 4957973, at *10.

◼ We disagree. Although the affidavit read as a whole may very well imply that Kimball's actions were the proximate cause of Guzick's injuries, it is not enough to satisfy *Brown–Wilbert*, which requires an affidavit to provide meaningful informa-

tion that "summarizes the expert's opinion." 732 N.W.2d at 219. A summary requires more than an implication; rather, a sufficient summary explicitly explains the expert's opinion on how the negligent acts were the proximate cause of the injury. Here, the affidavit does not at all detail the expert's theory of causation. It only states that Kimball's negligent acts "caused damages." This is exactly the type of conclusory statement we disapproved in *Brown–Wilbert*, 732 N.W.2d at 219 (stating that an affidavit must "provide some meaningful information, *beyond conclusory statements*, that ... summarizes the expert's opinion that the defendant's departure was a direct cause of the plaintiff's injuries" (emphasis added)).

This is not a minor defect. When he commenced this action, Guzick was not just beginning to explore the issues of liability and causation; he had previously brought actions against not one but two parties. Guzick had knowledge of the facts, and had been pursuing claims, for multiple years. To allow him to use the safe harbor, in light of these circumstances and given the conclusory statements we previously disapproved of in *Brown–Wilbert*, would eviscerate the second affidavit requirement.

Thus, Guzick's expert disclosure contains a major defect; it lacks a meaningful disclosure of an expert's opinion on an element of the prima facie case required to be established by an expert. Pursuant to *Brown–Wilbert*, such an expert disclosure does not qualify for safe-harbor protection to cure the defect. Because the disclosure's major defect precludes the use of the safe harbor of Minn.Stat. § 544.42, subd. 6(c), the district court did not abuse

---

6. In reaching the but-for causation issue, Guzick's expert would already have established a standard of care that Kimball should have followed in giving George legal advice.

its discretion in dismissing the complaint with prejudice.

Reversed.

LILLEHAUG, Justice (concurring).

I cannot disagree with the opinion of the court that, under existing law regarding Minn.Stat. § 544.42, subd. 6(c) (2014), as applied to the parties' arguments in this particular case of alleged legal malpractice, we must reverse the court of appeals. I write separately to suggest that the controlling case, *Brown–Wilbert, Inc. v. Copeland Buhl & Co.*, 732 N.W.2d 209 (Minn. 2007), both fundamentally misreads the statute and conflicts with our more recent medical malpractice precedent. *Brown–Wilbert* should be revisited and its key holding overruled.

I.

The court correctly accepts Guzick's interrogatory answer incorporating the expert review affidavit as the expert disclosure affidavit required by section 544.42, subdivision 6(c). The court then accurately articulates the test for whether expert testimony is required: "whether a plaintiff is required to make an expert disclosure is something that must be determined on a case-by-case basis for each element of the prima facie case of malpractice." Expert

testimony is generally required on the elements of the standard of care and its breach. *Wartnick v. Moss & Barnett*, 490 N.W.2d 108, 116 (Minn.1992). As the court notes, we have not necessarily required expert testimony to establish the attorney-client relationship and but-for causation.

The remaining element of malpractice is proximate cause. As the court indicates, Kimball agrees with the court of appeals that, in this legal malpractice case, an expert was required to establish proximate causation and, interestingly, Guzick does not disagree. Had he done so, it would have been a close call as to whether an expert was necessary to establish proximate cause under the facts of this case.[1]

Given Guzick's concession, the court does not err in considering his expert disclosure to be "conclusory." If an expert disclosure is only "conclusory," then, pursuant to *Brown–Wilbert*, it does not qualify for the safe harbor of section 544.42, subdivision 6(c), discussed below. Thus, given the particular posture of this case, and applying the existing precedent under the applicable statute, it follows that the court of appeals must be reversed and Kimball must be granted summary judgment.

---

1. Further, as discussed in the amicus brief of Minnesota Defense Lawyers Association, it is not entirely clear whether proximate cause in this case is even a question of fact for the jury, or rather a question of law for the court. *Compare Wartnick*, 490 N.W.2d at 115 ("The determination of proximate cause is normally a question of fact for the jury.... However, if reasonable minds cannot disagree, proximate cause becomes a question of law."), *and* Restatement (Third) of Torts: Liability for Physical and Emotional Harm § 29 cmt. q. (Am. Law Inst.2010) ("Scope of liability is a mixed question of fact and law, much like negligence. As with negligence, the court's role is to instruct the jury on the standard for scope of liability when reasonable minds can differ as to whether the type of harm suffered by the plaintiff is among the harms whose risks made the defendant's conduct tortious, and it is the function of the jury to determine whether the harm is within the defendant's scope of liability."), *with* William L. Prosser, *The Minnesota Court on Proximate Cause*, 21 Minn. L. Rev. 19, 27 (1937) (arguing, regarding unforeseeable consequences and proximate cause, that the "question is not one of causation, for the causal connection is clear and direct, without intervening forces of any kind. It is rather one of policy, as to whether defendant's responsibility for its admitted fault is to be extended to such results.").

## II.

While I concur, reluctantly, in this result, I hope that soon we will have an opportunity to revisit *Brown–Wilbert.* While neither party urged us to overrule it, the holding of *Brown–Wilbert* conflicts with both the plain language of section 544.42 and our later interpretation of the substantively similar medical malpractice statute.

I read section 544.42, the statute governing expert disclosures in malpractice cases against lawyers, accountants, and design professionals, as clear and unambiguous. Under the statute, a plaintiff must serve an expert disclosure—containing an expert's opinion, if necessary, establishing the elements of the prima facie case—within 180 days after commencement of discovery. Minn.Stat. § 544.42, subds. 2(2), 4(a) (2014). If the plaintiff fails to "comply with subdivision 4," the defendant may move the district court for "mandatory dismissal of each action with prejudice as to which expert testimony is necessary to establish a prima facie case." Minn. Stat. § 544.42, subd. 6(c). But such a motion "based upon claimed deficiencies of the affidavit or answers to interrogatories *shall not be granted*" unless the district court provides: (1) notice containing "specific findings as to the deficiencies of the affidavit or answers to interrogatories; and (2) 60 days to "satisfy the disclosure requirements in subdivision 4." Minn.Stat. § 544.42, subd. 6(c) (emphasis added). The 60 days to cure the deficiencies is the so-called "safe harbor."

Here, Guzick submitted as his expert disclosure an answer to an interrogatory incorporating the expert review affidavit in which the expert opined that ten different

acts were negligent. Upon the motion to dismiss by Kimball, the statute required the district court to provide notice to Guzick identifying any deficiencies in his disclosure—such as, in this case, a conclusory statement on proximate causation—and allow 60 days for Guzick to cure the deficiencies. Thus, when the district court granted Kimball's motion to dismiss without allowing safe harbor, it did not follow the plain language of the statute.

But I cannot fault the district court because it relied—as the court does today—on *Brown–Wilbert* to deny access to the safe harbor. In *Brown–Wilbert,* our court, in a 5–2 decision, held that plaintiffs must provide a "meaningful disclosure" in order to qualify for the safe harbor. 732 N.W.2d at 219. The *Brown–Wilbert* majority reasoned that only disclosures containing "minor deficiencies" would be allowed safe harbor; those with major deficiencies would have no such opportunity, as "[a]ny other interpretation would render the 180-day requirement meaningless." *Id.* at 217–18. This "meaningful disclosure" standard adopted by *Brown–Wilbert* and applied today is erroneous, and should be abandoned so that we can return to the statute's plain language.

The "meaningful disclosure" standard, and the related concepts of "major" and "minor" deficiencies, are judicial concoctions. The statute does not use the phrase "meaningful disclosure," and nothing in the statute states or implies that only affidavits with "minor" deficiencies qualify for safe-harbor protection. Rather, the statute says clearly that any deficient affidavit or interrogatory answer qualifies for the safe harbor.[2] *See* Minn.Stat. § 544.42,

---

2. The only statutory language cited by *Brown–Wilbert* to support its holding is the existence of the 180-day requirement. But it does not explain why the 180-day requirement would

be so "meaningless," *see Brown–Wilbert,* 732 N.W.2d at 217–18, without the "meaningful disclosure" standard. After receiving notice of deficiencies upon a motion to dismiss, a

subd. 6(c). *Brown–Wilbert* added words to an unambiguous statute, in conflict with the direct instruction from the Legislature on how to interpret its laws: "When the words of a law in their application to an existing situation are clear and free from all ambiguity, the letter of the law shall not be disregarded under the pretext of pursuing the spirit." Minn.Stat. § 645.16 (2014); *see also Cty. of Dakota v. Cameron*, 839 N.W.2d 700, 709 (Minn.2013) ("[W]e do not add words or phrases to an unambiguous statute.").[3]

Further, the precedent invoked by *Brown–Wilbert* does not prop up its house of cards. *Brown–Wilbert* cited four medical malpractice cases that espoused some variation of the "meaningful disclosure" standard. 732 N.W.2d at 217; *see also Teffeteller v. Univ. of Minn.*, 645 N.W.2d 420, 430 (Minn.2002) (requiring the affidavit to provide "more than a sneak preview"); *Lindberg v. Health Partners, Inc.*, 599 N.W.2d 572, 578 (Minn.1999) (requiring more information than simply identification of the expert or a "general disclosure"); *Stroud v. Hennepin Cty. Med. Ctr.*, 556 N.W.2d 552, 555 (Minn.1996) (requiring the affidavit to do more than "simply repeat facts in the hospital or clinic record"); *Sorenson v. St. Paul Ramsey Med. Ctr.*, 457 N.W.2d 188, 193 (Minn. 1990) (disapproving of "empty conclusions which, unless shown how they follow from the facts, can mask a frivolous claim").

plaintiff has only 60 days to cure them; any uncured deficiencies result in mandatory dismissal. And if a plaintiff provides neither an affidavit nor an answer to an interrogatory within the 180–day period, by the plain words of the statute, the safe harbor is not available. *See* Minn.Stat. § 544.42, subd. 6(c) (stating that the district court must issue "specific findings as to the deficiencies of the affidavit or answers to interrogatories," implying that such affidavit or answers to interrogatories must exist in the first place).

While *Brown–Wilbert* conceded that applying these medical malpractice cases to the non-medical professional malpractice statute was of limited value, 732 N.W.2d at 217, it did so anyway by applying *Sorenson*'s "meaningful disclosure" standard to deny the plaintiff access to the safe harbor. *See Brown–Wilbert*, 732 N.W.2d at 219 (quoting *Sorenson*, 457 N.W.2d at 193).

But the medical malpractice cases cited by *Brown–Wilbert* had no real value, as the medical malpractice statute did not even contain a safe harbor at the time. *See* Act of May 22, 2002, ch. 403, § 1, 2002 Minn. Laws 1706, 1706–07 (codified as amended at Minn.Stat. § 145.682, subd. 6(c) (2014)) (amending the medical malpractice statute to add a safe harbor). Indeed, in the absence of a statutory safe harbor, the "meaningful disclosure" standard was actually a judicially-created safe harbor, giving "borderline" plaintiffs—those with minor deficiencies—"less drastic alternatives to a procedural dismissal."[4] *Sorenson*, 457 N.W.2d at 193; *see also Wesely v. Flor*, 806 N.W.2d 36, 40 (Minn.2011).

Perceiving that this judicial safe harbor was inadequate, the Legislature enacted a statutory safe harbor for medical malpractice cases. *See Wesely*, 806 N.W.2d at 40. Now a failure to comply with the expert disclosure requirement results, upon motion, in:

3. The majority states that "[i]n order to give life to the second affidavit requirement, we have read a limitation into the safe-harbor provision of" the statute. Exactly; *Brown–Wilbert* added to the letter of the law under the pretext of pursuing its purported spirit.

4. Such alternatives included the authorization of a deposition of the expert at the plaintiff's expense or a limitation of the expert's testimony to those matters adequately disclosed. *Sorenson*, 457 N.W.2d at 193.

[M]andatory dismissal with prejudice of each action as to which expert testimony is necessary to establish a prima facie case, provided that: (1) the motion to dismiss the action identifies the claimed deficiencies in the affidavit or answers to interrogatories; (2) the time for hearing the motion is at least 45 days from the date of service of the motion; and (3) before the hearing on the motion, the plaintiff does not serve upon the defendant an amended affidavit or answers to interrogatories that correct the claimed deficiencies.

Minn.Stat. § 145.682, subd. 6(c) (2014). This medical malpractice safe harbor is substantively the same as the non-medical professional malpractice safe harbor found in section 544.42, subdivision 6(c).

In *Wesely v. Flor*, 806 N.W.2d 36, 41–43 (Minn.2011), decided four years after *Brown–Wilbert*, we interpreted the medical malpractice safe harbor. Unlike in *Brown–Wilbert*, a 6–0 majority[5] read the statute literally. "The statute plainly states that the safe-harbor period applies every time the defendant moves to dismiss under Minn.Stat. § 145.682, subd. 6. *The statute does not limit the safe-harbor period to only certain types of deficiencies.*" *Wesely*, 806 N.W.2d at 41 (emphasis added). Thus, in applying the plain language of the medical malpractice safe harbor, we expressly rejected the distinction between major and minor deficiencies created by

*Brown–Wilbert.* *See Wesely*, 806 N.W.2d at 41–42.[6]

The effect of today's application of *Brown–Wilbert* is that plaintiffs in professional malpractice cases may have refuge in the safe harbor if their affidavits contain only "minor deficiencies," however defined, while those in medical malpractice cases may have refuge for both major and minor deficiencies. This disparate treatment of similar statutory provisions makes no sense. But I acknowledge that the disparity is required by our existing case law.

When the right case arrives, the obvious solution to this contradiction is to conform *Brown–Wilbert* to *Wesely* and thereby return to the plain language of the safe harbor of section 544.42, subdivision 6(c). I acknowledge that, under *Brown–Wilbert*, baseless claims are dismissed 60 days earlier than they would be if allowed into the safe harbor. But that benefit is far outweighed by two costs: damage to our bedrock principle of statutory interpretation, and the premature death of potentially meritorious claims.

Although we are "extremely reluctant" to overrule our previous cases, "stare decisis does not bind us to unsound principles." *Oanes v. Allstate Ins. Co.*, 617 N.W.2d 401, 406 (Minn.2000). The principle of *Brown–Wilbert* is fundamentally unsound. The principle of *Wesely* is sound, and we should follow it in all malpractice cases.

---

**5.** Justice Paul Anderson, who wrote a strong and prescient dissent in *Brown–Wilbert*, 732 N.W.2d at 225–31, expressing concern that the "minor deficiencies" standard would work injustices, joined the unanimous court in *Wesely*. The other *Brown–Wilbert* dissenter, Justice Alan Page, took no part. *Wesely*, 806 N.W.2d at 44.

**6.** *Wesely* justified treating the safe harbors of the two statutes differently because the professional malpractice statute provides that the district court triggers the start of the safe-

harbor period by way of giving notice, while the medical malpractice statute's safe harbor is "automatic" and does not require the court to give notice. 806 N.W.2d at 41–42. This is a distinction without a difference, as the professional malpractice statute's safe-harbor provision is likewise automatic upon a motion to dismiss. Such a motion "shall not be granted unless" the court provides notice of the deficiencies and time to cure them. Minn.Stat. § 544.42, subd. 6(c).

Therefore, I respectfully concur in the result.

PAGE, Justice (concurring).

I join in the concurrence of Justice Lillehaug.