*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A16-0405**

Linda E. Walsh,
Appellant,

vs.

Richard J. Walsh, et al., Defendants,

Warrenn C. Anderson, et al.,
Respondents.

**Filed December 27, 2016
Affirmed
Rodenberg, Judge**

Swift County District Court
File No. 76-CV-12-436

Thomas Gunther, Gunther Law Office, LLC, Minneapolis, Minnesota (for appellant)

William M. Hart, Bradley M. Jones, Julia J. Nierengarten, Meagher & Geer, P.L.L.P., Minneapolis, Minnesota (for respondents)

Considered and decided by Halbrooks, Presiding Judge; Rodenberg, Judge; and Kirk, Judge.

## UNPUBLISHED OPINION

**RODENBERG**, Judge

Appellant Linda E. Walsh challenges the district court's dismissal of her legal-malpractice and breach-of-fiduciary-duty claims against Fluegel, Anderson, McLaughlin

& Brutlag, Chartered (FAMB), and Warrenn C. Anderson (collectively respondents). We affirm.

## FACTS

After 45 years of marriage to Richard Walsh, appellant initiated divorce proceedings in October 2010. During the divorce proceedings, Richard Walsh was represented by FAMB, which had previously represented the couple in other matters. Appellant dismissed the divorce proceeding in December 2010, and later signed a conflict waiver assenting to FAMB's representation of Richard Walsh. After appellant dismissed the divorce proceeding, FAMB did estate-planning work for appellant and Richard Walsh. FAMB drafted documents creating Walsh Family Farm, LLC, and irrevocable trusts for both Richard Walsh and appellant. In February 2011, Richard Walsh and the couple's son, Jason Walsh, brought appellant to FAMB's office, where appellant and Richard Walsh signed various documents that FAMB prepared for them. Appellant later started a second divorce action.

Appellant claims that, in the course of litigating the marriage dissolution, she learned "there were no real estate assets in the marital estate because they were all in irrevocable trusts." In July 2012, appellant sued Richard Walsh, Jason Walsh, FAMB, Anderson, Walsh Family Farm, LLC, and the two trusts. Among other claims, she alleged breach of fiduciary duty and legal malpractice against respondents. All claims against Richard Walsh and Jason Walsh were later settled, the complaint dismissed with prejudice by stipulation, and the trusts dissolved, removing the LLC and the trusts from the litigation. Respondents are the only remaining defendants in this action.

2

After appellant sued respondents, she served an amended complaint and attached to it an affidavit signed by her attorney stating that the attorney had reviewed the facts of the case with an expert witness, and that the expert would opine that respondents deviated from the applicable standard of care. Appellant later disclosed to respondents an expert report dated December 1, 2012. The expert report was not signed by appellant's counsel, but in March 2013, appellant incorporated the expert report in her answers to interrogatories, which were signed by her attorney.

The expert report is ten pages long. It lists the expert's credentials, summarizes the facts of the case, describes the mechanics of proving a legal-malpractice claim, and concludes with two pages of "opinions and analysis." The report describes Anderson as "a lawyer and principal of [FAMB]" and indicates that he represented appellant and Richard Walsh on a variety of legal matters over a period of 20 years. The "opinions and analysis" section does not refer to Anderson at all. The report details the attorney-client relationship between FAMB and appellant, the standard of care the expert believes FAMB owed to appellant, and FAMB's claimed breaches of that standard of care. The expert concludes by explaining the effect of the trust transactions, which were "advantageous to Richard and the children and disadvantageous to [appellant]." According to the expert:

> The apparent purposes and overriding effects of the scheme were to exclude [appellant] from control and management of the farm properties and to deprive [her] of any claim to the farm properties as marital assets in the event of a divorce. All significant features of the documents tended to those purposes.

The report makes two comments concerning causation, first opining that "FAMB and its lawyers deviated from the standard of care in their representation of [appellant], causing

3

injury to [appellant]," and later stating that "[appellant] was caused to accept and enter into the transactions by the malpractice of FAMB and thereby sustained injury. Whether that injury may be remedied by rescission or other relief remains to be determined. At the least, she has been injured by the uncertainty and expense of seeking relief."

On August 19, 2013, respondents moved to dismiss, arguing that the expert report did not adequately explain its opinions about FAMB's or Anderson's conduct as to satisfy the requirements of Minn. Stat. § 544.42 (2012), which requires a summary of the anticipated expert testimony as to each element for which an expert opinion will be offered at trial. The district court determined that the expert report meets the minimum standards set out for expert disclosure in all respects except that the disclosure lacked an attorney signature, which the court determined was a minor technical problem that had already been remedied. It denied respondents' motions to dismiss.

On January 21, 2014, respondents submitted a letter to the district court seeking permission to file a motion for reconsideration. On September 4, 2015, the district court granted respondents' request for reconsideration in light of the Minnesota Supreme Court's decision in *Guzick v. Kimball*, 869 N.W.2d 42 (Minn. 2015). Respondents then filed a motion for reconsideration of the earlier motion to dismiss, arguing that *Guzick* required dismissal of this case. On January 8, 2016, the district court issued an order applying *Guzick* and concluding that the expert report "failed to provide any meaningful information on [the expert's] opinion regarding causation." Accordingly, it dismissed appellant's claims.

4

This appeal followed. Anderson filed a related appeal, arguing that the district court erred when it denied Anderson's original motion to dismiss.

**D E C I S I O N**

In a legal-malpractice case where expert testimony is necessary to prove the claim, the plaintiff must produce two affidavits concerning the expert testimony. Minn. Stat. § 544.42, subd. 2 (2014).[1] First, the plaintiff must attach to her pleading an affidavit of expert review, stating that the attorney has reviewed the facts of the case with an expert and that the expert will opine that the defendant "deviated from the applicable standard of care and by that action caused injury to the plaintiff." *Id.*, subds. 2, 3 (2014). Second, she must "serve upon the opponent within 180 days" an affidavit of expert disclosure. *Id.*, subds. 2, 4 (2014). This affidavit must identify the experts to be called at trial, describe the substance of their expected testimony, and summarize the grounds for the testimony. *Id.*, subd. 4. The expert disclosure requirement may be satisfied by answers to interrogatories, but whether submitted as answers to interrogatories or as a stand-alone affidavit, the disclosure must be signed by the plaintiff's attorney. *Id.*

The purpose of the expert disclosure requirement under Minn. Stat. § 544.42 is to "provide for the early dismissal of frivolous malpractice claims." *Brown-Wilbert, Inc. v. Copeland Buhl & Co.*, 732 N.W.2d 209, 217 (Minn. 2007). To that end, failure to produce an affidavit of expert review or expert disclosure is fatal to a legal-malpractice claim.

---

[1] In 2014, Minn. Stat. § 544.42 was amended to modify certain time limits in subdivisions 2 and 4. 2014 Minn. Laws ch. 153 §§ 3 at 111; 4 at 111. Because these amendments do not affect our analysis of whether the affidavits were legally adequate, we reference the most recent version of the statute.

Minn. Stat. § 544.42, subd. 6 (2014). On motion, a district court must dismiss with prejudice a malpractice action not supported by adequate affidavits. *Id.* Before dismissal, however, the statute contains a safe-harbor provision, requiring the court to give the plaintiff "specific findings as to the deficiencies of the affidavit," and allow "60 days to satisfy the disclosure requirements." *Id.*, subd. 6(c); *Guzick*, 869 N.W.2d at 47. However, "[i]n order to give life" to the expert disclosure requirement, the Minnesota Supreme Court has held that the safe-harbor provision is meant only for curing minor technical deficiencies in an otherwise legally sufficient expert disclosure. *Guzick*, 869 N.W.2d at 48; *Brown-Wilbert*, 732 N.W.2d at 217-18.

To qualify for the 60-day safe harbor to remedy the technical problems of an expert disclosure, the initial expert disclosure must "provide some meaningful information, beyond conclusory statements." *Brown-Wilbert*, 732 N.W.2d at 219. This meaningful information must include identification of the expert and an explanation of the expert's opinion on each element of the plaintiff's prima facie case of malpractice for which the plaintiff needs to call an expert. *Guzick*, 869 N.W.2d at 48. A prima facie case of legal malpractice requires a litigant to establish "(1) the existence of an attorney-client relationship; (2) acts constituting negligence or breach of contract; (3) that such acts were the proximate cause of the plaintiff's damages; and (4) that but for [the attorney's] conduct the plaintiff would have been successful in the prosecution or defense of the action." *Id.* at 47 (quotation omitted).

The district court dismissed appellant's legal-malpractice and breach-of-fiduciary-duty claims on reconsideration for failure to satisfy Minn. Stat. § 544.42, subd. 4. While

appellant's affidavit of expert review was adequate, the district court found the expert report did not meet the requirements of Minn. Stat. § 544.42 or qualify for safe-harbor treatment. The district court determined that the report sufficiently establishes a prima facie case for the existence of an attorney-client relationship and the breach of a standard of care, but it determined that the report "failed to provide any meaningful information on [the expert's] opinion regarding causation." The district court also determined that the expert report did not contain sufficient information on damages, but determined that expert testimony was not required for that element, a determination that neither party has appealed.

We review the dismissal of a legal-malpractice action for failure to comply with expert disclosure requirements under an abuse-of-discretion standard. *Id.* at 46; *Brown-Wilbert*, 732 N.W.2d at 215. However, we review statutory construction de novo. *Guzick*, 869 N.W.2d at 46. The question of whether expert testimony is required for the plaintiff to establish a prima facie case of a particular element is a question of law that we review de novo. *Id.* at 46-47.

Generally, when determining if an expert disclosure is adequate, a court must first assess whether the plaintiff is required to make an expert disclosure, a question which "must be determined on a case by case basis for each element of the prima facie case of malpractice." *Id.* at 48-49. A plaintiff need not use expert testimony to establish an element of her case if a lay jury can adequately evaluate the attorney's conduct without an expert opinion. *Hill v. Okay Constr. Co.*, 312 Minn. 324, 337, 252 N.W.2d 107, 116

7

(1977). Here, appellant admits that her claims require expert testimony to establish proximate causation.

We therefore move to the second step of the inquiry and assess whether appellant's disclosure was sufficient to explain the expert's opinion on causation. When making this determination, we apply the safe-harbor standard because, so long as an expert disclosure meets this standard, the plaintiff is entitled to specific findings of insufficiency and 60 days to cure. Minn. Stat. § 544.42, subd. 6. We must assess whether the party's disclosure related to that element imparts a meaningful summary of the expert's opinion "beyond conclusory statements." *Guzick*, 869 N.W.2d. at 49; *Brown-Wilbert*, 732 N.W.2d at 219. "A summary requires more than an implication; rather, a sufficient summary explicitly explains the expert's opinion on how the negligent acts were the proximate cause of the injury." *Guzick*, 869 N.W.2d at 51. An affidavit which "read as a whole may very well imply" causation does not qualify for safe harbor. *Id.*

The district court determined appellant's expert report inadequate concerning proximate cause because it makes only "two conclusory statements" regarding plaintiff's injuries and how respondents caused them. The statements allege that FAMB caused harm to appellant and that appellant "sustained injury" because of FAMB's actions. Because neither statement details the chain of events that make up causation, the district court concluded that the expert report "fails to provide any meaningful information or explanation as to the causal-link between the alleged breach of duty by FAMB and its attorneys and the injuries, if any, suffered by [appellant]."

8

We agree with the district court that the expert report, though quite thorough on the issues of duty and breach, lacks "causational detail" in the fashion *Guzick* requires. A comparison to *Guzick*, where the expert disclosure was also found lacking, bears this out. *Guzick* was a dispute related to a power of attorney drafted for an elderly client without fully consulting with the client about the implications accompanying execution of a power of attorney. *Id.* at 44-45. The disclosure in *Guzick* identified ten acts that deviated from the standard of care and "caused damages." *Id.* at 45. The statement that the actions "caused damages" was the only line in the expert disclosure related to causation. The supreme court determined that "the affidavit read as a whole may very well imply" proximate causation, but this is "not enough to satisfy *Brown-Wilbert*, which requires an affidavit to provide meaningful information that 'summarizes the expert's opinion.'" *Id.* at 51 (quoting *Brown-Wilbert*, 732 N.W.2d at 219).

Appellant attempts to distinguish her expert's report from the expert disclosure in *Guzick* because her expert does more than simply allege that FAMB "caused damages." Although appellant's expert report contains two pages of legal opinion, most of the opinion section focuses on explaining the deviations from the standard of care. The expert's analysis flows logically from FAMB's duty to its client, appellant, to its breaches, to the effects of the breaches. Appellant argues that these statements are not conclusory when viewed as a whole. However, an implication of proximate cause is just as insufficient as a mere legal conclusion. *Id.* at 47, 51. Appellant's expert report contains both implications and conclusions concerning causation, but does not provide a description of how the breaches of duty caused appellant damages. Accordingly, the district court acted within its

9

discretion in dismissing the action under Minn. Stat. § 544.42, as interpreted by the supreme court.

Appellant argues that the district court should have afforded her safe harbor under Minn. Stat. § 544.42, subd. 6. Although appellant poses this argument in the alternative, courts apply the safe-harbor standard when determining whether an expert disclosure meets statutory requirements. *See id.* at 51. The district court determined that appellant's expert report did not sufficiently describe the expert's analysis of proximate cause, as required by *Brown-Wilbert* and *Guzick*. Accordingly, the safe-harbor provision is unavailable. *Id.* at 49; *Brown-Wilbert*, 732 N.W.2d at 219. Appellant attempts to argue that the report meaningfully explains causation and meets the *Brown-Wilbert* standard when analyzed "in toto." But *Guzick* holds that even an affidavit that "read as a whole may very well imply" proximate causation does not qualify for the statutory safe harbor. 869 N.W.2d at 51.

Appellant's argument concerning the safe-harbor provision is at its core an attack on *Brown-Wilbert* and *Guzick*. She argues that "the goal of expediency and finality that a section 544.42 dismissal can offer should not come at the expense of ensuring that all cases are decided upon their *true* merits." It is true that *Guzick* and *Brown-Wilbert* place a heavy burden on a malpractice plaintiff. *See Guzick*, 869 N.W.2d at 55 (Lillehaug, J., concurring) (examining the more stringent requirement for professional malpractice cases than medical malpractices cases to qualify for safe harbor). And appellant's expert report appears to be far more specific and detailed than the five-sentence expert disclosure in *Brown-Wilbert*, which stated that the experts were "expected to testify as to the conclusions set forth in the complaint, based upon the facts alleged in the complaint," or *Guzick*'s expert disclosure, a

repurposed affidavit of expert review which listed deviations from the standard of care and concluded that these actions "caused damages." *Id.* at 45; *Brown-Wilbert*, 732 N.W.2d at 214. However, the supreme court reaffirmed *Brown-Wilbert*'s narrow interpretation of the safe-harbor provision in *Guzick*. 869 N.W.2d at 51. As an error-correcting court, it is not for us to assess whether *Guzick* and *Brown-Wilbert* interpret the safe-harbor provision too narrowly. *See State v. Ward*, 580 N.W.2d 67, 74 (Minn. App. 1998) ("[W]e are not in position to overturn established supreme court precedent."). It is our duty to ensure that the district court properly applied *Guzick* and *Brown-Wilbert* to the facts of this case. It did.

Finally, appellant argues that the district court improperly changed its analysis in its order granting respondents' motion to dismiss on reconsideration. But between the district court's initial denial of respondents' motion to dismiss and its grant of that motion on reconsideration, *Guzick* was decided. Appellant cites no authority supporting her argument that a district court may not change its findings or its conclusion when reconsidering a prior order in light of a change or clarification in the relevant law. We are aware of no law prohibiting a district court, before the entry of judgment, from reconsidering an earlier order after a change in the legal landscape governing a claim.

Because we affirm the district court's dismissal of all claims against Anderson, we do not reach the issue raised by Anderson's related appeal.

**Affirmed.**

11